UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK A. PENDLETON, | ) |
|     Plaintiff | ) |
| v. | )    Civil Action No. 07cv1884 (JDB) |
| MICHAEL MUKASEY,<br>ATTORNEY GENERAL,<br>U.S. DEPARTMENT OF JUSTICE, | ) |
|     Defendant. | ) |

**DEFENDANT'S MOTION TO DISMISS OR ALTERNATIVELY,
TO TRANSFER TO THE EASTERN DISTRICT OF VIRGINIA**

Defendant Robert Mukasey Attorney General, United States Department of Justice, moves to dismiss this case for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(1), (3), and 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a). In the alternative, any claims not dismissed should be transferred to the Eastern District of Virginia where venue is proper. This motion is accompanied by a Memorandum and a proposed Order consistent with LCvR 7(a) and (c).

Respectfully submitted,

              /s/
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

              /s/
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

                                                        _____/s/_____
BENTON PETERSON
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W., Rm. E-4905
Washington, D.C.  20530
(202) 514-7238

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK A. PENDLETON, ) | |
| ) | |
|     Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 07cv1884 (JDB) |
| ) | |
| MICHAEL MUKASEY, ) | |
| ATTORNEY GENERAL, ) | |
| U.S. DEPARTMENT OF JUSTICE, ) | |
| ) | |
|     Defendant. ) | |

**DEFENDANT'S STATEMENT OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR
ALTERNATIVELY, TO TRANSFER TO THE EASTERN DISTRICT OF VIRGINIA**

Defendant Michael Mukasey Attorney General, United States Department of Justice, moves to dismiss this case for improper venue pursuant to Federal Rules of Civil Procedure 12(b)(1), (3), and 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a).  Alternatively, any claims not dismissed should be transferred to the Eastern District of Virginia where venue is proper.

**I.  BACKGROUND**

Plaintiff Mark A. Pendleton is employed as a Special Agent with the United States Department of Justice ("DOJ") Office of Inspector General ("OIG") Washington Field Office ("WFO").  See Complaint at ¶ 12.  In his Complaint, plaintiff asserts claims of racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq.  See Complaint at ¶¶ 12-17.  Specifically, plaintiff's complaint asserts that the Agency discriminated against him when, in May 2005, it failed to select him for one of two GS-14 Senior Special Agent ("SSA") positions in the WFO.  See Complaint at ¶ 7.

The WFO is located in Arlington, Virginia, and has been located there since February 18,

2004. See Declaration of Thomas F. McLaughlin ("McLaughlin Decl."), at ¶ 5. When the GS-14 positions were advertised and filled, the WFO was located in Arlington, Virginia. See McLaughlin Decl. at ¶¶ 5-6. Moreover, virtually every aspect of this case is based on events which occurred at the WFO. For example, (1) plaintiff was working at the WFO when the SSA positions were announced; (2) the SSA positions at issue were to be located at the WFO; (3) all of the SSA application packages were received and reviewed by the WFO selection panel; (4) all candidate interviews were conducted at the WFO; (5) the interviews of the candidates' supervisors took place at the WFO; (6) the deliberations among the panel members occurred at the WFO;[1] (7) the SSA selection decisions were reached by a panel headed by the WFO Special Agent in Charge; (8) the ultimate WFO SSA selectees reported for work at the WFO; and (9) the SSA positions at issue are still located at the WFO. See id. at ¶ 5-8, 11.

Despite these facts, plaintiff contends that venue is appropriate in Washington, D.C. The only explanation plaintiff offers as to why venue would be appropriate in Washington, D.C. is "because defendant's acts of discrimination and retaliation occurred in this judicial district, where plaintiff was and would have been employed but for the defendant's discrimination and retaliation." See Complaint at ¶ 11. In fact, defendant was not employed in the District of Columbia at the time the SSA selections were made and would not have been employed here had he been selected. See McLaughlin Decl. at ¶ 7. The WFO, where plaintiff works, and where he was employed at the relevant time, is located in Arlington, Virginia. See id. at ¶¶ 5, 7. Further, plaintiff has worked in Arlington since February 2004, and had he been selected for one of the

---

[1] One of the three panel members participated telephonically from Chicago, Illinois. See McLaughlin Decl. at ¶ 8.

SSA positions, he would have continued to work in Arlington.  See id.

## II.  ARGUMENT

### A.  Legal Standards

"[I]n considering a rule 12(b)(3) motion, the court accepts plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor."  Darby v. Dept. of Energy, 231 F. Supp.2d 274, 276 (D.D.C. 2002), citing 2215 Fifth St. Assocs. v. U-Haul Intl, Inc., 148 F. Supp.2d 50, 54 (D.D.C. 2001).  However, the court need not accept as true plaintiff's legal conclusions.  U-Haul, 148 F. Supp.2d at 54.  In order to prevail on a motion to dismiss for improper venue, the defendant must present facts that will defeat plaintiff's assertion of venue.  Id.

Title VII creates a limited waiver of the government's sovereign immunity from suit and stands as a bar to jurisdiction by any federal district court that does not meet its venue requirements.  Archuleta v. Sullivan, 725 F. Supp. 602, 603-04 (D.D.C. 1989).  Venue in Title VII cases is governed by 42 U.S.C. § 2000e-5(f)(3); see Bolar v. Frank, 938 F.2d 377, 379 (4th Cir. 1991); Troupe v. O'Neill, 2003 WL 21289977 (D. Kan. May 9, 2003).  A Title VII plaintiff can bring an action: (1) in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, (2) in the judicial district in which the employment records relevant to such a practice are maintained and administered, or (3) in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice.  42 U.S.C. § 2000e-5(f)(3); see also, Choi v. Skinner, No. Civ-A.89-1855 SSH, 1990 WL 605543, at *2 (D.D.C. Sept. 26, 1990) (citing, Stebbins v. State Farm Mutual Automobile Insurance Co., 413 F.2d 1100, 1102-03 (D.C. Cir. 1969), cert. denied, 396 U.S. 895 (1969)).

There is a fourth "residual" option that can be invoked only if one of the first three are not available.  See Donnell v. Nat'l Guard Bureau, 568 F. Supp. 93, 95 (D.D.C. 1983); Turbeville v. Casey, 525 F. Supp. 1070, 1072 (D.D.C. 1981).  Under the fourth option, an action can be brought in the district where the defendant has its principal office.  Id.

> B.   Plaintiff's Title VII claims should be dismissed or transferred pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a) for improper venue.

The Court of Appeals has held that, with respect to Title VII actions, it was "the intent of Congress to limit venue to the judicial districts concerned with the alleged discrimination . . ." Stebbins, 413 F.2d at 1103.  In this case, the judicial district with the strongest connection to the alleged discrimination is the Eastern District of Virginia, not the District of Columbia.  The alleged acts of unlawful discrimination occurred in Virginia, where the selecting official's actions took effect.  Further, but for the alleged unlawful employment practice, plaintiff would have worked in Virginia.  See McLaughlin Decl. at ¶ 11.  Finally, the relevant records are maintained in Virginia.  See id. at ¶ 9.

Plaintiff's allegations defeat reliance on the first venue option and demonstrate that the case belongs in the Eastern District of Virginia.  Virtually all of the employment practices which the plaintiff challenges in connection with the SSA selections at issue occurred in the OIG WFO in Arlington, Virginia.  As discussed above, plaintiff was working in the WFO when the SSA positions were announced; the announced SSA positions were to be located in the WFO; all of the SSA application packages were received and reviewed by a panel composed of the Special Agent in Charge of the WFO and two other OIG managers; all candidate interviews were conducted in the WFO; interviews of the candidates' supervisors occurred at the WFO; the

deliberations among the panel members occurred in the WFO; the SSA selection decisions were reached in the WFO; the WFO SSA selectees reported for work at the WFO; and the SSA positions at issue are still located there today. See McLaughlin Decl. at ¶¶ 5-8, 11.

The only action relating to the selection process occurring in Washington D.C. was the final authorization of the panel's recommendations by Assistant Inspector General ("AIGI") Thomas McLaughlin. See id. at ¶ 11. AIGI McLaughlin serves as the final selecting official for all special agents hired by the eight field offices within the Investigation Divisions. See id. However, it is significant to note that AIGI McLaughlin gives great deference to his management officials in their selection decisions, and he played a negligible role in the WFO SSA selection at issue here. See id. at ¶ 10. In fact, AIGI McLaughlin did not personally review any of the candidates' application packages. See id.. Moreover, he did not participate in the interviews of the candidates or their supervisors. See id. Rather, AIGI McLaughlin entrusted the panel members (1) to thoroughly review and compare the candidate applications; (2) to interview the applicants and their supervisors; (3) to deliberate about the candidates' qualifications, (4) to independently rank the candidates based on all of the information they obtained, and (5) to provide him with a detailed written discussion explaining their ranking of each of the candidates. See id. Indeed, like the WFO positions at issue here, AIGI McLaughlin approved the selection recommendations for each and every one of the seventeen (17) SSA positions which the OIG has filled during his tenure. See id. Accordingly, venue properly lies in the Eastern District of Virginia, where the overwhelming majority of operative events occurred.

Regarding the second venue factor, plaintiff does not allege that the government records relevant to his claims were generated or maintained in Washington, D.C. In fact, virtually all of

5

the relevant documents were generated and retained in the WFO in Arlington, Virginia, including: (1) the applications packages which were received and reviewed by WFO management in Arlington; (2) notes of the panel members pertaining to these application packages; (3) notes regarding the applicant interviews; (4) notes regarding the supervisor interviews; (5) notes concerning the comparisons of the candidates; (6) notes regarding the ranking of the candidates; and (7) a March 16, 2005 summary memorandum from the Special Agent in Charge ("SAC") of the WFO to AIGI Thomas McLaughlin, explaining the rankings of the candidates and all of the factors in support of this ranking. See id. Of these documents, the only ones which WFO management forwarded to Mr. McLaughlin in Washington, D.C. were the following: (1) the aforementioned memorandum from the SAC; (2) the application packages for the candidates; (3) and the notes taken by the panel members regarding the candidates. See McLaughlin Decl. at ¶ 9. It is significant to note, however, that Mr. McLaughlin did *not* review the application packages or the supervisor notes because he relied exclusively on the panel's assessment of the candidates. See id. at ¶ 10.

      Accordingly, the location of relevant documents also suggests that venue is proper in the Eastern District of Virginia. See Washington v. General Electric Corp., 686 F. Supp. 361 (D.D.C. 1988). The fact that AIGI McLaughlin received a few documents in Washington, D.C., before authorizing a candidate's selection is insufficient to establish proper venue here. To do so would mean that every OIG Agent selection across the nation would be subject to suit in the District of Columbia.

      Third, as explained above, the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice was Arlington, Virginia. See

6

McLaughlin Decl. at ¶ 11.  Finally, because the allegations show that venue is proper in the Eastern District of Virginia, plaintiff cannot invoke the "residual" venue option to assert that venue is proper here solely because the OIG Headquarters is located in Washington, D.C.  See 42 U.S.C. § 2000e5(f)(3); Stebbins, 413 F.2d at 1102; Donnell, 568 F. Supp. at 95; Turbeville, 525 F. Supp. at 1072.

The proper solution to remedy this lack of venue is dismissal or transfer to a district where venue is proper pursuant to 28 U.S.C. § 1406(a).[2]  Stebbins, 413 F.2d at 1102.  This Court has the discretion to decide which is more appropriate, dismissal or transfer.  See Naartex Consulting Corp. v. Watt, 722 F.2d 779, 789 (D.C. Cir. 1983); Cellutech, Inc. v. Centennial Cellular Corp., 871 F. Supp. 46, 50 (D.D.C. 1994) and General Elec., 686 F. Supp. at 362.  Defendant urges the Court to dismiss the complaint outright, because it is overwhelmingly clear that the case should have been brought in the Eastern District of Virginia, where the claims arose and where the decisions plaintiff challenges were made and implemented.  See General Elec., 686 F. Supp. at 363 (stating "the Court's first inquiry must be the locus of the alleged discrimination.").

> **C.    Any claims not dismissed should be transferred to the Eastern District of Virginia for the convenience of the parties and the witnesses and in the interest of justice pursuant to 28 U.S.C. § 1404(a).**

Even if plaintiff could satisfy the venue provisions of Title VII, any claims remaining

---

[2]  In relevant part, 28 U.S.C. § 1406(a) provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a).

7

should be litigated in the Eastern District of Virginia for the convenience of the parties and the witnesses and in the interest of justice. This Court should transfer the case to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a), which provides that: "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

In deciding whether to transfer a case to a more convenient forum, the Court may consider: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendant; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. Airport Working Group of Orange County, Inc. v. United States DOD, 226 F. Supp. 2d 227 (D.D.C. 2002) (hereinafter AWG). Though a plaintiff's "choice of forum is entitled to deference a plaintiff's choice receives less weight where the operative facts occurred in another forum and the plaintiff does not reside in the forum. AWG, 226 F. Supp. 2d at 230 (and cases cited therein). See also Weber v. Basic Comfort, 155 F. Supp. 2d 283 (E.D. Pa. 2001).

As demonstrated in plaintiff's complaint and the Declaration of Thomas F. McLaughlin, all pertinent events occurred in the Eastern District of Virginia. Plaintiff does not reside in Washington, D.C., but rather, in Silver Spring, Maryland. See Complaint. There are no connections to the District of Columbia, save for the final approval of the selection decision in Washington, D.C. See McLaughlin Dec. at ¶ 10. Thus, this case should be litigated in the Eastern District of Virginia, where the causes of action arose, where the decisions were made and

8

implemented, and where plaintiff worked and allegedly suffered the consequences of the nonselection.

Finally, the district courts must examine challenges to venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia. Trout Unlimited v. U.S. Dept. of Agriculture, 944 F. Supp. 13, 17 (D.D.C. 1996) (citing Cameron v. Thornburgh, 983 F.2d 253 (D.C. Cir. 1993)). "[A]lthough Plaintiff's choice of forum is entitled to great consideration, it is not determinative when other factors strongly militate, as they do here, in favor of transfer." Claasen v. Brown, Civ. No. 94-1018, 1996 WL 79490, Slip op. at *6 (D.D.C. 1996). Even if Plaintiff's choice of forum is entitled to some deference, it is far from dispositive where, as here, the case has virtually no contacts with the District of Columbia and other factors militate strongly in favor of transfer. Moreover, considerations of convenience and justice weigh in favor of transferring this action to the Eastern District of Virginia.

In sum, for the convenience of the parties, and in the interest of judicial economy, any remaining claims should be transferred to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a).

### III. CONCLUSION

For reasons stated herein, this action should be dismissed. Any claims not dismissed should be transferred to the Eastern District of Virginia where venue is proper.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____/s/_____
BENTON PETERSON
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W., Rm. E-4905
Washington, D.C.  20530
(202) 514-7238

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARK A. PENDLETON,** ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 07cv1884 (JDB) |
| ) | |
| **MICHAEL MUKASEY,** ) | |
| **ATTORNEY GENERAL,** ) | |
| **U.S. DEPARTMENT OF JUSTICE,** ) | |
| ) | |
| **Defendant.** ) | |

**ORDER**

UPON CONSIDERATION of Defendant's motion to dismiss or, alternatively, to transfer to the Eastern District of Virginia, the grounds stated therefor, any opposition thereto, and the entire record herein, it is on this ___ day of _____, hereby:

ORDERED that Defendant's motion should be and hereby is GRANTED; and it is

FURTHER ORDERED that this case is hereby TRANSFERRED to the Eastern District of Virginia / Plaintiff's Complaint is hereby DISMISSED WITH PREJUDICE.

_____
UNITED STATES DISTRICT JUDGE

cc:

BENTON PETERSON
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W., Rm. E-4905
Washington, D.C. 20530
(202) 514-7238

Robert C. Seldon, Esq.
1319 F Street, N.W.
Suite 200
Washington, D.C. 20004

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARK A. PENDLETON, )
        Plaintiff )
        v. ) Civil Action No. 07-1884 (JDB)
MICHAEL B. MUKASEY, )
ATTORNEY GENERAL, )
U.S. DEPARTMENT OF JUSTICE, )
        Defendant. )

## DECLARATION OF THOMAS F. MCLAUGHLIN

I, Thomas F. McLaughlin, declare as follows:

1. I am the Assistant Inspector General for Investigations, Office of the Inspector General, Department of Justice, 1425 New York Avenue, Suite 7100, Washington, D.C. 20530. I have worked for the Office of the Inspector General (OIG) since July 8, 1990. Prior to my OIG employment, I was employed for 21 years by the United States Secret Service, from which I retired in 1990. I was appointed Deputy Assistant Inspector General for Investigations (DAIGI) in 1995, and have served as the Assistant Inspector General for Investigations (AIGI) since November 1, 2004.

2. I make this declaration in connection with the Defendant's Motion to Dismiss or Alternatively, to Transfer Venue to the Eastern District of Virginia. The statements in this declaration are based upon my personal knowledge, belief, and experience, and upon information made available to me in the course of my official duties.

3. The DOJ OIG is responsible for oversight of the various components of the Department of Justice. The OIG Investigations Division is responsible for investigating allegations of criminal and administrative misconduct by DOJ employees and contractors/grantees.

4. The Investigations Division is composed of a headquarters office located in Washington, D.C. and eight field offices located throughout the United States. In addition, we have eight smaller, area offices that report through our field offices. As the head of the OIG Investigations Division, my office is located in headquarters in Washington, D.C.

5. One of our eight field offices is the Washington Field Office (WFO). Since February 2004, the WFO has been physically located at 1300 N. 17th Street, Suite 3200, Arlington, Virginia 22209.

6. In January 2005, the OIG advertised a vacancy for a GS-14, senior special agent position in the WFO. This was one of ten vacancies announced at that time for senior special agent positions in various field offices throughout the country. Although only one WFO vacancy was advertised initially, two individuals were eventually promoted as WFO senior special agents.

7. Plaintiff was one of eight OIG special agents who applied for the WFO vacancy. At the time he applied for the position, Plaintiff was an OIG special agent assigned to the WFO. Plaintiff had been working at the Arlington location since the WFO relocated there in February 2004.

8. With regard to the WFO SSA vacancies, a panel was formed consisting of the then Special Agent in Charge (SAC) of the WFO, a headquarters manager, and the Assistant Special Agent in Charge of the Chicago Field Office. The panel reviewed the application packages of the candidates, interviewed the candidates, spoke with the candidates current supervisors, deliberated regarding the candidates, independently ranked the candidates based on all of the information, including the interviews, and provided me with a written recommendation. The panel rated three candidates higher than the plaintiff to fill the WFO vacancy. The panel submitted to me a written memorandum, authored by the WFO SAC, which included a consensus ranking of the candidates and its reasons for these recommendations. The panel conducted this selection process in the WFO, with the Chicago manager participating in the interviews and panel deliberations by phone.

9. Virtually all of the documents associated with the selection process for the WFO SSA positions were created, utilized, and maintained in the WFO. This included: the candidate applications packages, which were sent to and reviewed by the panel; the notes taken by panel members pertaining to these application packages, the applicant and supervisor interviews, and the panel's evaluation and ranking of the candidates; and the memorandum from the SAC to me containing the panel's recommendations. The only documents the WFO forwarded to me in connection with my review were: the application packages, notes taken by the panel members, and the March 16, 2005 memorandum from Tom Huggins to me.

10. I was the selecting official for all of the senior special agent positions, including the WFO positions. It is my practice to give great deference to local managers in hiring decisions. Accordingly, I played a negligible role in the WFO SSA selections at issue here. I did not personally review the candidates' application packages or participate in the interviews of the candidates or their supervisors. Rather, I entrusted the panel members to thoroughly review and compare the candidate applications, to interview the applicants and their supervisors, to deliberate about the candidates' qualifications, to independently rank the candidates based on all of the information they obtained, and to provide me with a detailed written discussion explaining their rankings. Using this process, I have approved the panel recommendations for each and every one of the 17 SSA positions the OIG has filled during my tenure, including the WFO vacancies at issue.

11. The two individuals selected for the WFO positions reported for work at the WFO in Arlington and continue to work at that location. Had plaintiff been selected for one of these positions, he too would have been assigned to the Arlington location.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 17 day of JANUARY 2008 in Washington, D.C.

_____
Thomas F. McLaughlin