UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARK A. PENDLETON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 07cv1884 (JDB) |
| | ) | |
| MICHAEL MUKASEY, | ) | |
| ATTORNEY GENERAL, | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS OR IN THE ALTERNATIVE, TO TRANSFER**

Defendant Michael Mukasey Attorney General, United States Department of Justice,

responds to Plaintiff's Opposition to Defendant's Motion to Dismiss or in the Alternative, to

Transfer.

**I.  BACKGROUND**

Plaintiff Mark Pendleton is employed as a Special Agent with the United States

Department of Justice ("DOJ") Office of Inspector General ("OIG") Washington Field Office

("WFO").  In his Complaint, plaintiff asserts claims of racial discrimination and retaliation under

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq.  See

Complaint at pp. 12-17.  Specifically, plaintiff's complaint asserts that the defendant

discriminated against him when, in May 2005, it failed to select him for one of two GS-14

Senior Special Agent ("SSA") positions in the WFO.  See Complaint at Par. 7.

On January 17, 2005, the OIG posted a vacancy announcement for a GS-14 SSA position

in the Washington Field Office (WFO).  See DOJ EEO Report of Investigation (ROI), Tab E (4),

Vacancy Announcement No. OIG-2005-05. The WFO position was one of eleven SSA positions that the OIG announced at that time. ROI Tab D2, Interrogatory of Thomas McLaughlin at 6.

The vacancy announcement reflects that while the SSAs are not formally supervisors, they assist with the management of the OIG Investigations Division. They are expected to personally conduct, coordinate, and/or lead difficult and sensitive investigations, assist with work quality reviews that may provide support for official performance evaluations, and help formulate and implement policy. See ROI Tab E4, Vacancy Announcement No. OIG 2005-05 at 2. Their specific duties include: (1) providing quality assurance for investigations and report drafting, including reviewing investigative work products in draft and final form, identifying problem areas, and recommending supplemental activities or corrections; (2) performing analyses and conducting investigations with regard to a wide variety of allegations; (3) drafting and preparing concise, logical briefings, reports, and summaries; (4) participating as a management official in developing field office policy and in implementing division-wide policy relative to quality, investigative techniques, and procedures; and (5) assisting the Special Agent in Charge (SAC) and Assistant Special Agent in Charge (ASAC) in coordinating and referring completed investigations for evaluation and action. Id.

Complainant was one of eight current OIG Agents who applied for the SSA position at the WFO. See ROI Tab E8, Candidate Referral List. A panel of three OIG investigations Division managers, headed by the Special Agent in Charge of the WFO, thoroughly reviewed the application packages of each of the candidates, interviewed each of them, and ultimately ranked the candidates in order. ROI Tab D3, Huggins Declaration; ROI Tab D4, Johnson Declaration; and ROI Tab D5, Oleskowitz Declaration.

From the time the announcement was issued until the selections were made, every facet of this selection process has been centered at the defendant's Washington Field Office (WFO) in Arlington, Virginia.  For example:  (1) the plaintiff was working at the OIG Washington Field Office (in Virginia) at the time that the SSA positions were announced; (2) the announced SSA positions were to be located at the WFO; (3) the WFO selection panel, located in the WFO in Arlington, VA, was responsible for every substantive aspect of the SSA selections including: closely reviewing the application packages of each of the candidates, interviewing the candidates, interviewing the candidates' current supervisors, deliberating regarding the candidates, independently ranking the candidates based on all of the information including the interviews, and providing AIGI Thomas McLaughlin with a written memorandum providing a consensus ranking of the candidates and its reasons for these recommendations; (4) the SSA selectees reported for work at the WFO; (5) these SSA positions remain at the WFO today; (6) virtually all of the relevant documents relating to the SSA selections were generated and retained in the WFO; and (7) the plaintiff would have worked in the WFO if selected for the SSA position.  See Declaration of Thomas F. McLaughlin, attached to defendant's January 22, 2008 Motion to Dismiss.

Given the SSA selectee's role in working closely with OIG management and in providing guidance and leadership to other agents, the WFO selection panel members considered prior leadership or supervisory experience to be important to the SSA position.  ROI Tab D4, Johnson Declaration; ROI Tab D5, Oleskowitz Declaration.

After considering all of the information in the candidates' application packages, the candidate interviews, and the interviews of their supervisors, the panel concurred in selecting Agents Scott Myers and Michael Fletcher for the SSA positions.  Mr. Meyers had more than 26

3

years of law enforcement experience – one year at the OIG, twenty years with the United States

Secret Service, and five years with the Atlanta City Police Department.  ROI Tab D2, Attch 1,

March 16, 2005 Memo from Huggins to McLaughlin re: WFO Senior Special Agent Interviews.

Mr. Myers also had significant previous supervisory experience, having served in two different

management positions at the Secret Service: the Resident Agent in Charge of one office and the

GS-14 ASAC in the Forensic Services Division, where he was responsible for the day-to-day

management of a 35-member polygraph program.  At the time of the interview, he was

conducting a complex FBI whistleblower investigation for the OIG, for which he had

interviewed numerous high-ranking FBI officials and conducted extensive document review and

analysis.  Id.

Michael Fletcher had more than 22 years of law enforcement experience, including 21

years with the U.S. Secret Service.  Id.  Mr. Fletcher had a strong criminal investigative

background, having served in a number of Secret Service field offices and the American

Embassy in Paris, France, where he was responsible for investigations of financial crimes in

several former Soviet republics.  Id.  He too had supervisory experience as a GS-14 ASAC of the

Secret Services' WFO, where he had supervised 20 special agents.  During his year with the

OIG, he had handled a number of priority investigations and he projected a mature and

professional image during the interview.  Id.

The panel ranked complainant fourth among the 8 candidates.  They made note of his

more than 25 years of law enforcement experience and the significant institutional knowledge he

had gained during his long tenure with the OIG.  Id.  However, they noted that unlike the higher-

rated candidates, he had no previous supervisory experience.  Id.  In addition, his writing and

organization skills were in need of improvement and his performance during the interview had

4

not been overly impressive – he failed to fully answer several questions and appeared to ramble at times.  Id.

In sum, while selectees Myers and Fletcher had an equivalent number of years of law enforcement experience to plaintiff – twenty-six years and twenty-one years respectively, compared with Complainant's twenty-six – they also both had substantial prior supervisory experience and had held GS-14 positions at other government agencies.  In contrast, Complainant had no supervisory experience and had never been a GS-14.  Further, since joining the OIG, both selectees had worked priority cases and showed themselves to be highly skilled investigators and writers, whereas Complainant's supervisors had consistently reported that his writing skills were in need of improvement.  In addition,  the panel members concurred that both selectees had performed impressively at the interview, while Complainant had been somewhat hesitant and rambling.

As referenced above, on March 16, 2005, the panel provided a memorandum, from WFO SAC Thomas Huggins to AIGI Thomas McLaughlin, containing a consensus ranking of the eight candidates, including the perceived strengths and weakness of each of the candidates.  ROI Tab D2, Huggins Declaration, Attch. 1, March 16, 2005 memorandum.  Because Mr. McLaughlin had entrusted the panel to evaluate all of the information regarding the candidates, and in fact did not even have access to most of the information the panel used in making its selections (i.e., the interviews of the candidates and their supervisors, etc.), he purposely played a minimal role in the selection process.  It is uncontested that Mr. McLaughlin had no role in:  personally reviewing the candidates' application packages, comparing and contrasting the applicant's backgrounds, interviewing the applicants, interviewing the applicants' supervisors, deliberating

the candidates' qualifications, independently ranking the candidates based on all of this information, or producing a written analysis of these rankings. As a result, Mr. McLaughlin's only role in the selection process was to provide final approval of the panel selections. In fact, Mr. McLaughlin has approved the panel recommendations for each and every one of the 17 SSA positions the OIG has filled during his tenure, including the WFO vacancies at issue. McLaughlin Declaration at ¶ 10.

## II. ARGUMENT

The defendant has thoroughly demonstrated that every factor bearing on venue in this case favors venue in Virginia. Plaintiff's Opposition fails to address, much less refute, any of the significant factors favoring venue in Virginia. Instead, plaintiff focuses on three failing arguments: (1) that the mere fact that the WFO panel's selection decision was approved in D.C. must confer jurisdiction in D.C.; (2) that AIGI McLaughlin's failure to overrule the WFO panel's selection decision based on the plaintiff's recent completion of two priority investigations somehow suggests that Mr. McLaughlin had the greater role in the selection decision; and (3) plaintiff's choice of venue in the District of Columbia must be paramount, regardless of all of the above factors favoring venue in Virginia.

The defendant respectfully submits that each of these arguments are completely without merit.

A . Where all facets of the SSA selection occurred in Virginia, mere final approval of the selection in Washington D.C. does not confer jurisdiction in D.C.

Plaintiff suggests that the mere fact that AIGI McLaughlin granted final approval of the WFO Panel's selection while stationed in Washington, D.C. somehow confers jurisdiction in the District of Columbia. However, the defendant has demonstrated, and the plaintiff has failed to

refute in any way, that Virginia was the jurisdiction where: (1) virtually every aspect of the alleged unlawful employment practice (nonselection) was committed - from the review of the applications packages, to the interviews, to the selections; (2) virtually all of the relevant documents pertaining to the selection were created and maintained; and (3) the plaintiff would have worked but for the alleged unlawful employment practice.  Choi v. Skinner, 42 U.S.C. § 2000e-5(f)(3); see also, Choi v. Skinner,  1990 WL 605543, at *2 (D.D.C. Sept. 26, 1990) (citing, Stebbins v. State Farm Mutual Automobile Insurance Co., 413 F.2d 1100, 1102-03 (D.C. Cir. 1969), cert. denied, 396 U.S. 895 (1969)).  Because the allegations show that venue is proper in the Eastern District of Virginia, plaintiff cannot invoke the "residual" venue option to assert that venue is proper here solely because the OIG Headquarters is located in Washington, D.C.  See 42 USC Sec. 2000e(5)(f)(3); Stebbins, 413 F.2d at 1102; Donnell, 568 F.Supp. at 95; Turbeville, 525 F.Supp. at 1072.

      B. Plaintiff's work on two priority investigations is irrelevant to the venue determination

Plaintiff points out that following the issuance of the vacancy announcement on January 17, 2005, ASAC Willie Haynes sent an e-mail to Thomas McLaughlin on January 24, 2005, stating that plaintiff had done a "great job" on two priority investigations which Mr. McLaughlin and Mr. Bondurant had previously assigned to him.  The record reflects that ten days later, on February 3, 2005, plaintiff submitted his application package to the WFO selection panel.  See ROI Tab E5, plaintiff's application for SSA position, p. 10 (date of application).  In this package, the plaintiff attached his most recent performance appraisal, which included commentary from ASAC Haynes regarding plaintiff's progress on the aforementioned two priority investigations

as of June, 2004.  ASAC Haynes commented that after five months of working on these investigations, plaintiff:  had conducted numerous interviews, had demonstrated a good working knowledge of the investigative process, had been timely on both investigations, and that one of the cases had been accepted for prosecution.  <u>ROI Tab E5</u>, p. 12.

Plaintiff now contends that the fact that AIGI McLaughlin did not inform the panel of ASAC Haynes' January 2005 e-mail regarding the priority investigations somehow prevented the panel from selecting him because they were unaware of Mr. Haynes' assessment.  This argument is plainly contradicted by the facts of this case.

First, the plaintiff's suggestion that Mr. McLaughlin somehow deprived the panel of important information is clearly without merit, given that plaintiff himself had provided the panel with his latest evaluation, in which Mr. Haynes had provided much more extensive and specific remarks complimenting the plaintiff's work on the two priority investigations. Accordingly, the panel was fully aware of that work, and the mere final comment that plaintiff did a "great job" was of nominal value.  In any event, it was clearly the plaintiff's responsibility – not Mr. McLaughlin's - to provide any and all positive information about his accomplishments to the panel.[1]  Plaintiff had every opportunity, including in his interview, to inform the panel of all of his accomplishments in 16 years with the OIG, including Mr. Haynes assessment that he had done a "great job" on his latest priority investigations.  Plaintiff could have updated the panel with this information at any time during the two months before the panel made its recommendations to Mr. McLaughlin on March 16, 2005.

---

[1] Claims of unfairness in the selection procedure, including a claim that the selecting official failed to consider an applicant's total background, will not nullify the choice.  <u>Oliver-Simon v. Nicholson</u>, 384 F. Supp. 2d 298, 311 (D.C. Cir. 2005).

Second, even if the panel had received Mr. Haynes "great work" comment, these two priority investigations certainly would not have changed the panel's recommendations because the panel did not rely heavily on priority investigations in choosing the selectees over the plaintiff. Rather, the panel cited other factors in finding the selectees far more qualified than plaintiff for the SSA position, including overall investigative experience and accomplishments, past supervisory experience, oral briefing abilities, prior recognitions and awards, and multitasking abilities. See ROI Tab D2, Huggins Declaration, Attch. 1, March 16, 2005 memorandum; ROI Tab D3, Huggins Declaration; ROI Tab D4, Johnson Declaration; and ROI Tab D5, Oleskowitz Declaration.

Finally, while, as stated above, Mr. McLaughlin did not intervene in the panel selections, plaintiff's performance on these priority investigations would not have impacted AIGI McLaughlin's approval of the selections in this case. As plaintiff points out, plaintiff had already performed many priority investigations for the OIG. Pl. Opp. at 4. Mr. McLaughlin concurred in these selections based on the selectees' superior overall law enforcement experience and abilities, including their prior supervisory experience, as well as Mr. McLaughlin's personal observations of the candidates during oral presentations, and on assessments that had been provided to him over the years by the candidates' supervisors. ROI Tab D2, McLaughlin Declaration, at 4-5.

C. Plaintiff's mere preference of venue in Washington, D.C. cannot overcome all of the factors favoring jurisdiction in Virginia.

Plaintiff's arguments that he would prefer venue to be in Washington D.C. cannot overcome all of the above factors favoring jurisdiction in Virginia. Plaintiff's choice was not "lightly disturbed" in this case, but rather, was overwhelmed by all of the substantive factors

favoring jurisdiction in Virginia.  The government has fully carried the burden of showing that

the overall interests of justice would be served by the transfer.  Contrary to plaintiff's suggestion,

the government did not cite the convenience of the parties as a primary factor, but merely

another factor which favored the transfer.  Though a plaintiff's "choice of forum is entitled to

deference, a plaintiff's choice receives less weight where the operative facts occurred in another

forum and the plaintiff does not reside in the forum.  Airport Working Group of Orange County,

Inc. v. U.S. Dept. of Defense, 226 F. Supp. 2d 227, 230 (and cases cited therein).  See also

Weber v. Basic Comfort, 155 F. Supp. 2d 283 (E.D. Pa. 2001).  All relevant events in this case

occurred in the Eastern District of Virginia.


## III.  CONCLUSION

For reasons stated herein, this action should be dismissed.  Any claims not dismissed

should be transferred to the Eastern District of Virginia where venue is proper.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
BENTON PETERSON
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W.,

10

Washington, D.C.  20530
(202) 514-7238

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a copy of the foregoing Defendant's Response to Plaintiff's Opposition to Defendant's Motion to Dismiss or, in the Alternative, to Transfer to be sent via ECF on this ___ day of February, 2008 to

Robert C. Seldon & Associates
1319 F Street, N.W.
Suite 200
Washington, D.C. 20004

_____

Benton Peterson
Assistant United States Attorney

1

Motion p. 3

RoE Tab E 4

Vacancy Ann.

*K, bul 2/4/05*



**USAJOBS** "WORKING FOR AMERICA"

USAJOBS is the official job site of the United States Federal Government. It's your one-stop source for Federal jobs and employment information.

HOME | SEARCH JOBS | MY USAJOBS | FORMS | CAREER SERVICES

FAQS | PRIVACY POLICY | HELP | SITE MAP

## Office Of The Inspector General

Department: Department Of Justice
Agency: Justice, Office of the Inspector General
Job Announcement Number: OIG-2005-05

| Overview | Duties | Qualifications and Evaluation | How to Apply | Benefits and Other Information |

← Back to Search Results

### SENIOR CRIMINAL INVESTIGATOR

**SALARY RANGE:** 88,369.00 - 114,882.00 USD per year
This position includes 25% Law Enforcement Availability Pay.

**OPEN PERIOD:** Monday, January 17, 2005 to Friday, February 04, 2005

**SERIES & GRADE:** GS-1811-14/14

**POSITION INFORMATION:** Full-Time  Permanent

**DUTY LOCATIONS:** 1 vacancy - Alexandria, Arlington & Falls Church, VA

**WHO MAY BE CONSIDERED:**
Applications will be accepted from current agency employees only.

**JOB SUMMARY:**

**THIS POSITION IS OPENED TO OIG STATUS EMPLOYEES ONLY.**

**THIS POSITION IS LOCATED IN THE INVESTIGATIONS DIVISION, WASHINGTON FIELD OFFICE.**

The Office of the Inspector General, U.S. Department of Justice (DOJ), promotes economy, efficiency and effectiveness within DOJ.  The Office of the Inspector General also enforces criminal and civil laws, regulations, and ethical standards within DOJ by investigating individuals and organizations who allegedly are involved in financial, contractual, or criminal misconduct in DOJ programs and operations.

The Investigations Division investigates alleged violations of fraud, abuse, and integrity laws that govern DOJ employees, operations, grantees, and contractors.  The Investigations Division Special Agents develop cases for criminal prosecution and civil or administrative action.

**A RELOCATION BONUS OF UP TO $10,000 MAY BE PAID.**

**KEY REQUIREMENTS:**

- Time in Grade

← Back to Search Results

PRINT    ✉ EMAIL A FRIEND

*1*

**USAJOBS** USAJOBS is the official job site of the United States Federal Government.
"WORKING FOR AMERICA" It's your one-stop source for Federal jobs and employment information.

TAGS | PRIVACY POLICY | HELP | SITE MAP

HOME | SEARCH JOBS | MY USAJOBS | FORMS | SERVICES

## Office Of The Inspector General

Department: Department Of Justice
Agency: Justice, Office of the Inspector General
Job Announcement Number: OIG-2005-05

| Overview | Duties | Qualifications and Evaluation | How to Apply | Benefits and Other Information |

→ Back to Search Results

### SENIOR CRIMINAL INVESTIGATOR

**Additional Duty Location Info:**
1 vacancy - Alexandria, Arlington & Falls Church, VA

**MAJOR DUTIES:**

**The incumbent in this position serves as a senior criminal investigator responsible for Quality Assurance of investigations and report drafting within a field office as part of a National Quality Assurance strategy. The incumbent is responsible for the field office efforts in implementing effective quality control procedures; reviewing the investigative work products in draft and/or final form, identifying problem areas and recommending supplemental activities or corrections; performing analyses and conducting investigations with regard to a wide variety of allegations received by the Office of the Inspector General; drafting and preparing concise, logical briefings and reports of investigation and summaries, including recommendations for prosecute and/or administrative action; participating as a management official in developing field office policy and in implementing division-wide policy relative to quality, investigative techniques and procedures; assisting the Special Agent in Charge and Assistant Special Agent in Charge in coordinating and referring completed investigative matters to the DOJ for evaluation and action as appropriate. Performs special assignments where investigative matters cover a wide range of U.S. Codes and administrative laws; and performs other duties as assigned.**

→ Back to Search Results

 PRINT          EMAIL A FRIEND

 **Send Mail**

**Send Mail to:**
Department Of Justice
DOJ/OIG/OFFICE OF HUMAN RESOURCES
1425 NEW YORK AVENUE, N.W., ste 7018
WASHINGTON, DC 20530
US
Fax: 202-305-9755

 **Questions?**

**For questions about this job:**
DOJ/OIG OFFICE OF HUMAN RESOURCES
Phone: 202-616-4501
Fax: 202-305-9755
Internet: oig.personnel@usdoj.gov

**USAJOBS Control Number:** 362093
EEO Policy Statement | Reasonable Accommodation Policy Statement | Veterans Information
Legal and Regulatory Guidance

# USAJOBS

**"WORKING FOR AMERICA"**

USAJOBS is the official job site of the United States Federal Government. It's your one-stop source for Federal jobs and employment information.

FAQs | PRIVACY POLICY | HELP | SITE MAP

HOME | SEARCH JOBS | MY USAJOBS | FORMS | EMPLOYER SERVICES

## Office Of The Inspector General

**Department: Department Of Justice**
**Agency: Justice, Office of the Inspector General**
Job Announcement Number: OIG-2005-05

Overview | Duties | Qualifications and Evaluation | How to Apply | Benefits and Other Information

→ Back to Search Results

## SENIOR CRIMINAL INVESTIGATOR

### QUALIFICATIONS REQUIRED:

You must have one year of specialized experience at a level close to the work of this job that has given you the particular knowledge, skills, and abilities required to successfully perform. Typically we would find this experience in work within this field or a field that is closely related.

After appointment, you will be subject to random testing for illegal drug use.

Time in grade restrictions must be met by the closing date of the announcement.

You will be required to do some travel.

### HOW YOU WILL BE EVALUATED:

You will be evaluated to determine if you meet the minimum qualifications required; and on the extent to which your application shows that you possess the knowledges, skills, and abilities associated with this position as defined below. When describing your knowledges, skills, and abilities, please be sure to give examples and explain how often you used these skills, the complexity of the knowledge you possessed, the level of the people you interacted with, the sensitivity of the issues you handled, etc.

(1) Comprehensive and extensive knowledge of investigative principles, techniques, methods and procedures in order to oversee, coordinate and conduct the full range of investigative activities; (2) Ability to effectively present information both orally and in writing to convey ideas and concepts, defend rationale and gain support for a position or proposed activity; (3) Expert knowledge of the OIG, its operations pertinent laws, policies, and regulations in order to plan, conduct and coordinate investigations related to fraud, waste, abuse and other mismanagement; (4) Skill in recognizing, developing and presenting evidence that reconstructs events, sequences and time elements; and establishes relationships, responsibilities, legal liabilities and conflicts of interest in a manner that meet requirements for presentation in various legal hearings and court proceedings.

→ Back to Search Results

🖨 PRINT          ✉ EMAIL A FRIEND

📧 **Send Mail**          ❔ **Questions?**

3



## Office Of The Inspector General

Department: **Department Of Justice**
Agency: **Justice, Office of the Inspector General**
Job Announcement Number: OIG-2005-05

| Overview | Duties | Qualifications and Evaluation | How to Apply | Benefits and Other Information |

→ Back to Search Results

### SENIOR CRIMINAL INVESTIGATOR

**HOW TO APPLY:**
You must submit your application so that it will be received by the closing date of the announcement.

Please submit the following:  (1) A written application for employment.  You may use an OF-612, Optional Application for Federal Employment, a resume  or any other written format. Although we do not require a specific format, certain information is required to determine if you are qualified. You must include all of the information specified in this vacancy announcement.  A Narrative Assessment of your qualifications in terms of the Knowledge, Skills and Abilities identified within this announcement.  Describe experience (paid or unpaid), education, training and self-development as related to the KSAs.

You must submit a copy of your last Notification of Personnel Action (SF50) and a copy of your most recent Performance Appraisal.


**AGENCY CONTACT INFO:**

DOJ/OIG OFFICE OF HUMAN RESOURCES
Phone: 202-616-4501
Fax: 202-305-9755
Internet: oig.personnel@usdoj.gov

Or write:
Department Of Justice
DOJ/OIG/OFFICE OF HUMAN RESOURCES
1425 NEW YORK AVENUE, N.W., ste 7018
WASHINGTON, DC 20530
US
Fax: 202-305-9755


**WHAT TO EXPECT NEXT:**
Once your complete application is received we will conduct an evaluation of your qualifications and determine your ranking. The most highly qualified candidates will be referred to the hiring manager for further consideration and possible interview. We expect to make a selection within 45 days of the closing date of this announcement. You will be notified of the outcome.

→ Back to Search Results

PRINT      EMAIL A FRIEND

Send Mail                Questions?

f2

1/18/2005 5:38 P



## Office Of The Inspector General

**Department: Department Of Justice**
**Agency: Justice, Office of the Inspector General**
Job Announcement Number: OIG-2005-05

| Overview | Duties | Qualifications and Evaluation | How to Apply | Benefits and Other Information |

➤ Back to Search Results

### SENIOR CRIMINAL INVESTIGATOR

**BENEFITS:**

You may participate in the Federal Employees Health Benefits program, with costs shared with your employer. More info: http://www.usajobs.opm.gov/jobextrainfo.asp#FEHB.

Life insurance coverage is provided. More info: http://www.usajobs.opm.gov/jobextrainfo.asp#life

Long-Term Care Insurance is offered and carries into your retirement. More info: http://www.usajobs.opm.gov/jobextrainfo.asp#ltci

**OTHER INFORMATION:**

You must submit all required information by the closing date. If materials are not received, your application will be evaluated solely on the information available and you may not receive full consideration or may not be considered eligible.

The materials you send with your application will not be returned.

➤ Back to Search Results

 PRINT           EMAIL A FRIEND

 **Send Mail**

**Send Mail to:**
Department Of Justice
DOJ/OIG/OFFICE OF HUMAN
RESOURCES
1425 NEW YORK AVENUE, N.W., ste
7018
WASHINGTON, DC 20530
US
Fax: 202-305-9755

(?) **Questions?**

**For questions about this job:**
DOJ/OIG OFFICE OF HUMAN
RESOURCES
Phone: 202-616-4501
Fax: 202-305-9755
Internet: oig.personnel@usdoj.gov

**USAJOBS Control Number: 362093**

EEO Policy Statement | Reasonable Accommodation Policy Statement | Veterans Information
Legal and Regulatory Guidance

  

Motion p. 4

RJE Tab D2

- McLaughlin Interrog

- 3/16/05 Memo from Huggins ~~McLaugh~~
         to McLaughlin.

- 12/17/04 Memo re: SSA
                    Program

- Candidate Quests re: SSA position

UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF INSPECTOR GENERAL
REPORT OF INVESTIGATION

| | | |
|---|---|---|
| Mark Alton Pendleton | * | |
| | * | |
| Complainant, | * | |
| | * | |
| | * | Docket Number B-05-2536 |
| Office of Inspector General | * | |
| U.S. Department of Justice | * | |
| Washington, D.C. | * | |
| | * | |
| Agency. | * | |

INTERROGATORY FOR Thomas F. McLaughlin

For the record.  In a letter dated September 1, 2005, from Ted McBurrows, Director, EEO Staff, Justice Management Division, DOJ, to Complainant's representative, Mr. Robert Seldon, the following was accepted for investigation:

Complainant alleges that because of his race (Black), age (49) and reprisal, he was not selected for one of two GS-14 Senior Criminal Investigator positions (Vacancy number OIG-2005-05).

Q:  Please provide your full name for the record.
A: THOMAS FRANCIS MCLAUGHLIN

Q:  Do you have a representative?  If so, identify the representative to include business address and phone number (if federal employee, position, series, and grade).
A:  NO

Initials

Q:  Please state the unit, branch, division and Agency in which you are currently employed.  If less than two years provide information regarding previous employment.
A:  DEPARTMENT OF JUSTICE, OFFICE OF THE INSPECTOR GENERAL, INVESTIGATIONS DIVISION.

Q:  What is your job title, grade and series?
A: ASSISTANT INSPECTOR GENERAL (AIG) – SES - 1811

Q:  How long have you been in that position?
A:  SINCE NOVEMBER 2004

Q:  How long had you worked at DOJ?
A:  SINCE JULY 1990

Q:  What is the name and title of your first line supervisor, and how long were you under their supervision?  If less than two years provide information regarding previous supervisor.
A:  CURRENT FIRST LINE SUPERVISOR IS DEPUTY INSPECTOR GENERAL (DIG) PAUL MARTIN – SINCE 11/04.  PRIOR FIRST LINE SUPERVISOR WAS AIG T.J. BONDURANT.

Q:  What is the name and title of your second line supervisor, and how long were you under their supervision?  If less than two years provide information regarding previous supervisor.
A:  CURRENT SECOND LINE SUPERVISOR IS INSPECTOR GENERAL GLENN FINE – SINCE 11/04.  PRIOR SECOND LINE SUPERVISOR WAS DIG PAUL MARTIN.

Q:  State your Race.
A:  WHITE

Q:  State your DOB.
A:

2

Initials

Q: Do you know the Complainant, Mark Alton Pendleton? If so, when did you
become acquainted with him and in what capacity have you known him; i.e.,
co-worker, subordinate, and/or personal friend?
A: YES. SINCE 1990. CO-WORKER.


Q: In what capacity were you involved in the selection process for the GS-14
Senior Criminal Investigator positions advertised in Vacancy Announcement
number OIG-2005-05?
A: SELECTING OFFICIAL.


Q: How many positions were filled from Vacancy Announcement number OIG-
2005-05 and where were the positions located?
A: TWO POSITIONS IN THE WASHINGTON FIELD OFFICE.


Q: Who did you recommend or select for the position(s) and what were your
reasons?
A: I SELECTED MICHAEL FLETCHER AND SCOTT MYERS.


Q: What is the Race of the selectee(s)?
A: THEY BOTH APPEAR TO BE CAUCASIAN.


Q: What is the age of the selectee(s)?
A: I DO NOT KNOW.


Q: Did the selectee(s) have any prior EEO activity?
A: I DO NOT KNOW.


Q: Was the complainant on the referral for this vacancy announcement?
A: YES

3

Initials

Q: Did you interview the complainant for this/these position(s)? If not, why not?

A: NO. I DID NOT CONDUCT ANY INTERVIEWS MYSELF. THE INTERVIEW PANEL INTERVIEWED MR. PENDLETON AND 7 OTHER CANDIDATES. I REVIEWED THE RECOMMENDATIONS OF THE INTERVIEW PANEL CONTAINED IN A MEMORANDUM TO ME DATED MARCH 16, 2005 FROM SAC HUGGINS. (SEE MARCH 16, 2005 MEMORANDUM FROM CHARLES HUGGINS TO THOMAS MCLAUGHLIN, ATTACHED).

THE INTERVIEW PANEL RANKED THE 8 APPLICANTS IN TERMS OF THEIR RECOMMENDED CHOICE(S). THE HIGHEST RANKED CANDIDATE, MICHAEL P. TOMPKINS, HAD ALREADY BEEN SELECTED FOR PROMOTION TO ANOTHER POSITION IN HEADQUARTERS. I SELECTED THE CANDIDATES WHICH THE PANEL RANKED SECOND (SCOTT A. MYERS) AND THIRD (MICHAEL W. FLETCHER).

Q: What were the selection criteria you used in making your decision to recommend or select for this/these position(s)?

A: THE CRITERIA UPON WHICH THE SELECTIONS WERE MADE INCLUDED: INVESTIGATIVE ABILITIES, LEADERSHIP ABILITIES, INTERPERSONAL SKILLS, CHARACTER AND INTEGRITY, TIMELINESS, ORAL AND WRITTEN COMMUNICATION ABILITIES, AND PRIOR ACCOMPLISHMENTS. (SEE DECEMBER 17, 2004 MEMORANDUM FROM THOMAS MCLAUGHLIN TO ALL SPECIAL AGENTS IN CHARGE RE: SENIOR SPECIAL AGENT PROGRAM).

Q: What was your reason for not recommending or not selecting the complainant?

A: BOTH OF THE SELECTEES HAD EXTENSIVE LAW ENFORCEMENT EXPERIENCE AND SUPERIOR ABILITIES FOR THE SSA POSTIONS AT ISSUE. MR. MEYERS HAD OVER 26 YEARS OF SUBSTANTIVE LAW ENFORCEMENT EXPERIENCE, WHILE MR. FLETCHER HAD 22 YEARS. SIGNIFICANTLY, BOTH SELECTEES ALSO HAD SEVERAL YEARS OF SUBSTANTIVE LEADERSHIP EXPERIENCE AS GS-14 INVESTIGATIVE SUPERVISORS, WHICH MR. PENDLETON DID NOT. FURTHER, I HAVE PERSONALLY OBSERVED BOTH OF THESE INDIVIDUALS' IMPRESSIVE INTERPERSONAL AND OGANIZATIONAL SKILLS DURING PRESENTATIONS WHICH THEY EACH PROVIDED TO THE INSPECTOR GENERAL. HOWEVER, THE SINGLE PRESENTATION WHICH I SAW MR. PENDLETON GIVE (IN APPLYING FOR A LIAISON/INSTRUCTOR POSITION) WAS POORLY RECEIVED BY SEVERAL

4

Initials _____

OIG OFFICIALS. THIRD, MESSRS. MEYERS AND FLETCHERS' SUPERVISORS
HAVE CONSISTENTLY RELATED THAT THEY ARE BOTH CONCISE AND
EFFICIENT WRITERS, WHEREAS I HAVE BEEN INFORMED FOR MANY
YEARS THAT MR. PENDLETON'S WRITING HAS REQUIRED SIGNIFICANT
CORRECTION.

FINALLY, IN SELECTING FOR EACH OF THE ELEVEN SSA POSITIONS, I
CERTAINLY RELIED ON THE RECOMMENDATIONS OF THE INTERVIEWING
PANELS. THE OIG WENT TO GREAT CARE TO DEVELOP A FAIR AND
OBJECTIVE PANEL SYSTEM INCLUDING AT LEAST TWO PANEL MEMBERS
WHO DID NOT WORK DIRECTLY WITH THE CANDIDATE. THE PANEL FOR
THE WASHINGTON FIELD OFFICE VACANCY RECOGNIZED MR. PENDLETON
AS AN ABOVE AVERAGE CANDIDATE, WITH OVER 25 YEARS OF LAW
ENFORCEMENT EXPERIENCE, AND CONSIDERABLE INSTITUTIONAL
KNOWLEDGE ABOUT THE DOJ OIG. HOWEVER, THE PANEL CONFIRMED
THAT MR. PENDLETON CONTINUED TO REQUIRE FURTHER ENHANCEMENT
IN HIS WRITING AND ORGNIZATIONAL SKILLS. FURTHER, THE PANEL
CLEARLY DID NOT CONSIDER MR. PENDLETON'S INTERVIEW RESPONSES
TO BE AS CLEAR AND CONCISE AS THOSE OF THE SELECTEES. (SEE
MARCH 16, 2006 MEMORANDUM, ATTACHED).

Q: Did you ever communicate to the complainant your reasons for not
recommending or not selecting the complainant? If so, when, how and what
did you tell him.
A: NO.

Q: What qualifications did the selectee(s) have that were better than the
complainant's?
A: SEE ABOVE.

Q: Were race, age or prior EEO activity factors in consideration of who to
recommend or select for this/these position(s)? If so, explain.
A: NO. I SELECTED THE CANDIDATES WITH THE MOST RELEVANT
EXPERIENCE AND THE GREATEST ABILITY TO ASSIST MANAGEMENT IN
THESE SENIOR SPECIAL AGENT POSITIONS WITHIN THE OIG WASHINGTON
FIELD OFFICE.

Initials

Q: Do you have any documents you wish to provide? If so, please provide a list identifying the documents, number each page and affix your initials to the first page of each document.
A. SEE THE (TWO) DOCUMENTS REFERENCED ABOVE (ATTACHED).


Q: Is there anything you would like to add to your statement?
A: IT IS NOTEWORTHY THAT AT THE TIME THESE SELECTIONS WERE MADE, I SELECTED A TOTAL OF ELEVEN SENIOR SPECIAL AGENT POSITIONS AROUND THE COUNTRY. THREE OF THE ELEVEN WERE MINORITY CANDIDATES INCLUDING AN AFRICAN AMERICAN MALE, AN AFRICAN AMERICAN FEMALE AND A HISPANIC FEMALE.

Pursuant to Title 28 U.S.C. _ 1746, I declare, under penalty of perjury, that the foregoing statement is true and correct to the best of my recollection. I understand the information I have given is not to be considered confidential and that it may be disclosed to authorized parties.

Affiant's signature

2 | 17 | 06
Date

6                                    Initials

**PRIVACY ACT NOTICE TO COMPLAINT INTERVIEW WITNESSES**
**(OTHER THAN COMPLAINANT)**
**FOR EMPLOYMENT DISCRIMINATION COMPLAINT INVESTIGATIONS**
**GENERAL**

This information is provided pursuant to Public Law 93-579 (Privacy Act of l974) December 31, 1974 for individuals supplying information for inclusion in a system of records.

**AUTHORITY**

The authority to collect the information requested by this interview is derived from one or more of the following:
Tide 5, Code of Federal Regulations. Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, (United States Code, Section 2000e-16; Executive Order 11418, as amended.

**PURPOSES AND USES**

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed to any agency of the Federal Government having a working relationship with regards to EEO Commission activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

**EFFECTS OF NONDISCLOSURE**

Disclosure of the information sought is voluntary. However, failure on the part of Department of Justice employees to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you, up to and including termination. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_Thomas F. McLaughlin_
_____
Type or print name of witness
statement)

_[signature]_
_____
Signatue of Witness (Person providing

_3 | 9 | 2006_
_____
Date

_WASHINGton DC_
_____
Location

**normawhite**

| | |
|---|---|
| **From:** | <Marcus.Williams@usdoj.gov> |
| **To:** | <JANEBREDMON@aol.com> |
| **Sent:** | Friday, May 19, 2006 8:52 AM |
| **Subject:** | RE: Information for Pendleton, B-05-2536 |

Jane,

We don't have a record of previous activity for the persons named below.

MW

-----Original Message-----
From: JANEBREDMON@aol.com [mailto:JANEBREDMON@aol.com]
Sent: Thursday, May 18, 2006 3:09 PM
To: Williams, Marcus (EEO)
Cc: normawhite@ccconline.net
Subject: Information for Pendleton, B-05-2536

Marcus,

Norma is almost completed with the review of the Pendleton investigation.
However, we need to ascertain whether or not any of the RMOs have had previous
EEO activity.  Would you ask someone to obtain this information?  Their names
are:
1.   Thomas F. McLaughlin
2.   Charles T. Huggins
3.   William F. Johnson
4.   John F. Oleskowicz
5.   Gene E. Morrison

Thanks, Jane

Jane Redmon, General Manager/Chief Reviewer
Adept Services, Inc.
voice    703-931-5519
fax      703-671-0854
email    JaneBRedmon@aol.com



**U. S. Department of Justice**

Office of the Inspector General

Washington Field Office        202-616-4766 (PHONE)
1300 North 17ᵗʰ Street Suite 3200   202-616-9884 (FAX)
Arlington, VA 22209

March 16, 2005

MEMORANDUM

TO:                Thomas F. McLaughlin
                   Assistant Inspector General
                   For Investigations

FROM:              Charles T. Huggins
                   Special Agent in Charge
                   Washington Field Office

SUBJECT:           WFO Senior Special Agent Interviews

        Reference is made to your memorandum dated December 23, 2004 regarding additional Senior Special Agent (SSA) positions for the Investigations Division.

        Vacancy announcement number OIG-2005-05 opened on January 17, 2005 and closed on February 4, 2005. Eight special agents applied for the WFO vacancy and were referred to WFO to be interviewed. ASAC William F. Johnson, Headquarters, ASAC John F. Oleskowicz, CFO, and I were selected to conduct the panel interviews. The interviews were conducted at WFO on February 28, 2005, March 2, 2005 and March 7, 2005 in person and via teleconferencing and telephone.

        Prior to the interviews each panel member reviewed the candidate's applicant packet and discussed their strengths and weaknesses with their individual supervisor(s). While the panel wanted to give veteran OIG agents appropriate credit for their dedication and their accomplishments at the OIG, we did not want to shortchange those candidates who had strong law enforcement experience and qualifications, but less OIG experience. Accordingly, we have based our rankings of the below listed candidates on the totality of their law enforcement work history, their life experiences, knowledge of their performance at the OIG, and their responses to the standard set of questions, including their logic and persuasiveness in presenting their answers.

        At the onset of each interview I explained to each candidate that the SSA position was created to identify highly motivated and qualified personnel to assist management functions of the Investigations Division. Further that SSAs are expected to personally conduct, coordinate and/or lead difficult and sensitive investigations, assist with work quality reviews (which may provide support for official performance evaluations), and to help formulate and implement policy. I told each of them that it is particularly important

Thomas F. McLaughlin
Page 2

that the person selected possess outstanding investigative skills, as well as leadership traits. Lastly, I told them that the purpose and focus of their interview was to elicit information that would provide insights in determining whether they possessed the necessary skills and leadership traits required of an SSA.

During their interviews, each of the eight candidates were asked the exact same thirteen questions – which none of them had seen before – and which were relevant to the leadership traits required of an SSA. These questions also assessed the candidates' poise and ability to give coherent presentations in a high-pressure situation, which was indicative of their potential performance in high-level briefings before the Inspector General and other high-level Department officials. Finally, the interview provided insight into the candidates' leadership qualities – i.e., their ability to express themselves forcefully in a high-pressure situation.

Following the interviews, the panel members separately and independently summarized our impressions of each candidate, and ranked the candidates in order, based on their interview responses, as well as the aforementioned factors. ASACs Johnson, Oleskowicz and I independently ranked the first five candidates in the same order and the last three candidates in slightly different order. Our panel ranked the candidates in the following order: **Michael P. Tompkins, Scott A. Myers, Michael W. Fletcher, Mark A. Pendleton, Steven A. Carrera, Dorothy M. Wortham, David E. Trosch and Thomas A. Gibson.**

First choice, **Michael P. Tompkins,** is considered an outstanding candidate. Mr. Tompkins has over 20 years of law enforcement experience with the DOJ/OIG and Naval Criminal Investigative Service (NCIS). Mr. Tompkins served in a wide range of assignments with NCIS to include Acting Resident Agent in Charge of the Camp Pendleton, CA Resident Agency. This office is the largest NCIS office in the Western U.S. He supervised three subordinate offices in Southern California and Western Arizona with twenty seven field agents and six support personnel. In his last assignment with NCIS, Mr. Tompkins was temporarily promoted to ASAC (GS-14), San Diego Field Office (SDFO) responsible for the Initiative/Special Operations Squad supervising forty three Special Agents, two subordinate supervisors, two computer specialists and one administrative support employee. Since joining the OIG Mr. Tompkins served in the SDFO before transferring to WFO in July 2003. Since arriving at WFO he has completed seven complex priority investigations and several other cases. He has been assigned as the Acting ASAC providing operational guidance to the agents and conducting case reviews. In his most recent yearly evaluation his ASAC identified him as a top-performer in the office and someone who could be tasked with the most difficult and challenging investigative assignments. During his interview for the SSA position, Mr. Tompkins projected a command presence while providing answers that were both

2

Thomas F. McLaughlin
Page 3

thoughtful and well reasoned. He has a depth of experience, interpersonal skills, and organizational abilities that suggest he will be able to assume the responsibilities of the SSA in an outstanding manner.

Second choice, **Scott A. Myers,** is considered an outstanding candidate. Mr. Myers has over 26 years of law enforcement experience including one year with the OIG, 20 years with the U.S. Secret Service and five years with the Atlanta City Police Department. Mr. Myers has extensive experience in criminal investigations in large and small offices. He served as the Resident Agent in charge of the Tulsa, OK Resident Agency where he was responsible for supervising a three agent office with two clerical staff. He coordinated, assigned, or conducted criminal investigations in addition to being responsible for domestic terrorism issues in the wake of the OK City bombing. In his last assignment with the Secret Service he served as an ASAC (GS-14) in the Forensic Services Division for four years. He was responsible for the day to day management of the 35 member polygraph program. Mr. Myers is currently conducting a complex FBI whistleblower investigation based on allegations of retaliation and nonfeasance of duty against several high-level FBI officials. Mr. Myers has conducted numerous interviews of high ranking FBI officials nationwide and conducted extensive document review and analysis. During his interview for the SSA position, Mr. Myers projected a command presence and was exceptionally articulate. He displayed both the understanding and the application of all of the requisite SSA traits, with particular strength in the areas of leadership, interpersonal skills and organization.

Third choice, **Michael W. Fletcher,** is considered an outstanding candidate. Mr. Fletcher has over 22 years of law enforcement experience including one year with the OIG and 21 years with the U.S. Secret Service. Mr. Fletcher has a strong criminal investigative background having served in Secret Service offices in Washington, DC, Miami, FL, New York City, NY and Paris, France. While assigned to the American Embassy in Paris, France, from 1998-2002, he was responsible for investigations (especially in the area of financial crimes) and issues of Secret Service interest in a number of countries to include the former Soviet countries of Moldova, Belarus, and Latvia. Upon his return to the United States he was promoted to Assistant to the Special Agent in Charge (GS-14) of the Washington Field Office where he supervised 20 special agents. Since arriving at WFO Mr. Fletcher has handled a number of FBI, DEA and U.S. Marshals Service priority investigations. During his interview for the SSA position, Mr. Fletcher projected a mature and professional image. He displayed a sense of self confidence while fielding a wide range of difficult questions. He possesses the leadership traits required of an SSA.

3

Thomas F. McLaughlin
Page 4

Fourth choice, **Mark A. Pendleton**, is considered an above average candidate. Mr. Pendleton has over 25 years of law enforcement experience with the DOJ/OIG, GPO/OIG, AG/OIG and the Federal Protective Service. Mr. Pendleton possesses a great amount of institutional knowledge about the DOJ/OIG but lacks any substantive supervisory experience. Although he has willingly worked a wide range of investigations while assigned to the OIG he continues to require further enhancement in his writing and organizational skills. During his interview for the SSA position, Mr. Pendleton projected a professional image but failed to fully answer several questions, and at times, appeared to ramble.

Fifth choice, **Steven M. Carrera**, is considered an above average candidate. Mr. Carrera has over 14 years of law enforcement experience with the DOJ/OIG and the Department of State OIG. Mr. Carrera has worked a wide range of investigations while assigned to the OIG to include the last year and a half on the Smith-Leung FBI espionage review. Mr. Carrera lacks any substantive supervisory experience and needs to improve in the area of attention to detail. During his interview for the SSA position, Mr. Carrera projected a professional image; however, his oral presentation skills were lacking.

Sixth choice, **Dorothy M. Wortham**, is considered an average candidate. Ms. Wortham has over 13 years of law enforcement experience with the DOJ/OIG and AG/OIG. She is approaching 2 years in grade at the GS-13 level. She has worked a wide range of investigations since being assigned to the OIG; however, she does not work well on her own. During her interview for the SSA position, Ms. Wortham projected a professional image but appeared nervous and struggled in her oral responses to the panel's question. Ms. Wortham would be an ideal candidate for the Leadership Development Program.

Seventh choice, **David E. Trosch**, is considered an average candidate. Mr. Trosch has 11 years of law enforcement experience with the DOJ/OIG and DCIS. He is presently assigned to the Fraud Detection Office (FDO) and has not been assigned to work a priority investigation. In his last assignment with DCIS he served in the Computer Evidence Recovery Program as a Program Manager (GS-14). Prior to his assignment to the FDO, in April of 2004, Mr. Trosch had not worked an investigation as the lead case agent since July 1998. During his interview for the SSA position, Mr. Trosch projected a professional image and while his answers were thoughtful and articulate they lacked substance.

Eighth choice, **Thomas A. Gibson**, is considered an average candidate. Mr. Gibson has more than 20 years of experience as a criminal investigator and 7 years as a uniformed U.S. Secret Service police officer. Mr. Gibson has served as an agent with the IRS, DCIS, Postal Service Inspector General and the DOJ/OIG. He is presently assigned to the FDO and has not been assigned to work a priority investigation. During his interview for the SSA position, Mr. Gibson projected a professional image; however, the panel felt that his answers to the standard set of questions lacked substance.

December 17, 2004

MEMORANDUM FOR ALL SPECIAL AGENTS IN CHARGE

FROM:             THOMAS F. MCLAUGHLIN
                  ASSISTANT INSPECTOR GENERAL
                     FOR INVESTIGATIONS

SUBJECT:          Senior Special Agent Program

        Recently, Inspector General Glenn A. Fine approved additional Senior
Special Agent (SSA) positions for the Investigations Division.  The increase in
positions will enable the Division to build on the existing program and employ
the team approach in priority investigations and other key initiatives.  At the
same time, the Division will be better positioned to rely on a highly motivated
staff of senior, non-supervisory agents to regularly handle the most difficult
assignments and to assist in the overall management of the Division.

        Vacancy announcements for the new SSA positions will be published
shortly.  All interested special agents are encouraged to apply for positions in
their own office as well as in offices around the country.

        As set forth below, new interview procedures are being instituted to help
ensure the selection of the best-qualified candidates to fill SSA vacancies.  They
are as follows:

   •   A three-member panel will be selected to interview all candidates for the
       position of SSA.  While the individual members may vary, the panel's
       core composition will remain the same.  In most instances, the panel will
       consist of the Special Agent in Charge (SAC) from the office where a
       vacancy exits, a manager from another OIG field office, and a manager
       from Headquarters.

   •   The three-member panel will interview each candidate, using a set of 25
       pre-determined questions (attached).  Candidates will be asked to
       respond to questions intended to help evaluate a person's investigative
       skills and leadership traits.  During the interview, each panel member
       will be required to take notes.  At the end of the process, the SAC should
       forward the notes to Headquarters for retention.

5

- On completing the interviews, the SAC will submit a memorandum to the Assistant Inspector General, Investigations Division, with the panel's recommendation of the best-qualified candidate for the SSA position. In the memorandum, the SAC should identify the date and place of the interviews, the names of the panel members, the names of the candidates who were interviewed and their rank order, and the name of the individual who is being recommended for promotion to the SSA position. Additionally, the SAC should briefly explain the basis for recommending the candidate, to include a discussion of the investigative skills and leadership traits that set the candidate apart from other applicants.

   In closing, I ask for your full cooperation in this important process so that we – the Investigations Division – are able to select the best-qualified, ideally suited, and highly motivated candidates for the position of Senior Special Agent.

   Please share this memorandum with your employees. The attached set of questions should not be shared except with your management team.

   Attachment

6

# Candidate Questions - Senior Special Agent

The position of Senior Special Agent (SSA) was created to identify highly motivated and qualified personnel to assist with the management functions of the Investigations Division. Senior Special Agents are expected to personally conduct, coordinate and/or lead difficult and sensitive investigations, assist with work quality reviews (which may provide support for official performance evaluations), and to help formulate and implement policy. It is particularly important that the persons selected possess outstanding investigative skills, as well as leadership traits.

The purpose and focus of this interview is to elicit information that will provide insights in determining whether you possess the necessary investigative skills and the leadership traits required of an SSA.

## Investigative Abilities – *ability to recognize all appropriate issues requiring investigation, to develop an effective investigative work plan, to efficiently obtain the information to resolve the investigative issues, and to summarize investigative findings in a clear and concise written and oral format.*

Question 1: Explain the steps you take to conduct thorough, yet objective, investigations.

Question 2: How do you feel about the OIG's current assignment and handling of priority investigations? As an organization, are we going about them in the right way? What improvements, if any, would you suggest?

Question 3: Tell us about the priority cases you have worked, and how that experience is relevant to working as an SSA.

Question 4: How would you organize a team to work a priority investigation?

Question 5: In reviewing and editing investigative reports, what do you feel is most important?

Question 6: How would you avoid showing bias and opinion in OIG reports?

Question 7: In conducting case reviews, what would you look for in assessing the quality and timeliness of investigations?

Question 8:  In deciding which allegations the OIG should investigate, what factors would you consider?

Question 9:  What are your strengths and weaknesses as an agent? [*Note: Prior to the interview, the panel members should discuss each applicant's abilities in this area with the applicant's supervisor(s). During the interview the panel should examine the applicant's strengths and weaknesses as they relate to their ability to be successful SSAs.*]

## Leadership - *ability to motivate, instruct, inspire, guide, mentor, and encourage positive actions.*

Question 10:  What leadership traits do you admire and why?

Question 11:  Tell us about investigations you have led or other leadership roles you have played.

Question 12:  How would you set an example for members of your team?

Question 13:  How would you handle a situation in which you were asked to help implement an OIG policy you disagreed with?

Question 14:  Faced with factions and divisive behavior in an office, what would you do to bring about change?

## Interpersonal Skills - *ability to work well with others and achieve mutual respect.*

Question 15:  What strategies would you use in order to work effectively with someone you do not like?

Question 16:  How do you earn the respect and loyalty of others?

Question 17:  How would you deal with agents on your team who were not pulling their share of the load?

## Character/Integrity - *the personal qualities that distinguish one as ethical, honest, truthful, impartial, and fair.*

Question 18:  How do you define integrity?  Individually, what steps do you take to safeguard your integrity?

8

Question 19:  What qualities do you admire in a person?

**Timeliness** - *the initiation and completion of tasks within an acceptable period of time.*

Question 20:  What strategies have you used to manage your time more efficiently?

Question 21:  How would you improve the timeliness of OIG investigations?

## Communication (Oral and Written)

Question 22:  Describe your public speaking skills.  Tell us about special presentations in which you have used these skills.

Question 23:  What feedback do you get on your written reports?

## Recognition and Accomplishments

Question 24:  Tell us about awards and other special recognition you have received and how you earned them.

## Summation

Question 25:  There are a number of qualified candidates for the position of Senior Special Agent.  Why should the Investigations Division select you over other qualified agents?

Motion p. 4

RoI Tab. E8

Referral List

U.S. Department of Justice

Office of the Inspector General

FPL:GS-14 MERIT PROMOTION LIST

CANDIDATE REFERRAL LIST

1425 New York AV NW, Wash., DC

| Part I – Completed by Personnel Office | |
|---|---|
| .ﬞﬞ.ie, Series, & Grade of Position | Date: February 11, 2005 |
| SENIOR CRIMINAL INVESTIGATOR, GS-1811-14 | INVESTIGATIONS DIVISION, **Washington Field Office** |

| | |
|---|---|
| Announcement Number & Dates: | Area of Consideration:  OIG-Wide |
| OIG –2005-05 OP: 1/17/2005; CL: 2/04/2005 | |

Total Number of Candidates Found to be Eligible: 8   Evaluation and Ranking Accomplished by:

| Panel Chairperson: | Panel Members: | Personnel Advisor: |
|---|---|---|

## TO SELECTING SUPERVISORY OFFICIAL

The following candidates are referred to you for employment consideration. Please return this list to the OIG Personnel Office or request and extension by March 11, 2005. If no selection is made, please attach a written explanation. The Personnel Office will contact you to discuss how to proceed with the staffing of your vacancy.

### PROMOTION ELIGIBLES

Fletcher, Michael W.

Myers, Scott A.
Pendleton, Mark A.

| Personnel Office Representative:  Helen D. Keiler | Phone Number:  202/616-4509 |
|---|---|

### Part II- Completed by Selecting Supervisor/ Official

To: OIG Personnel Office

Name(s) of Candidate(s) Selected: Mike Fletcher / Scott Myers

Name and Signature of Selecting Supervisor/ Official:        AIG        Date: 5/24/06

Motion p. 4

RoI ~~Tabs~~ D3

ROI Tab D3 - Huggins Declaration

Tab D4 - Johnson Declaration

Tab D5 - Oleskowitz Dec.

UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF INSPECTOR GENERAL
REPORT OF INVESTIGATION

| | | |
|---|---|---|
| Mark Alton Pendleton | * | |
| | * | |
| Complainant, | * | |
| | * | |
| | * | Docket Number B-05-2536 |
| Office of Inspector General | * | |
| U.S. Department of Justice | * | |
| Washington, D.C. | * | |
| | * | |
| Agency. | * | |

---

## INTERROGATORY FOR CHARLES T. HUGGINS

---

For the record.  In a letter dated September 1, 2005, from Ted McBurrows, Director, EEO Staff, Justice Management Division, DOJ, to Complainant's representative, Mr. Robert Seldon, the following was accepted for investigation:

Complainant alleges that because of his race (Black), age (49) and reprisal, he was not selected for one of two GS-14 Senior Criminal Investigator positions (Vacancy number OIG-2005-05).

Q: Please provide your full name for the record.
A: Charles T. Huggins

Q:  Do you have a representative?  If so, identify the representative to include business address and phone number (if federal employee, position, series, and grade).
A:  No.

Q:  Please state the unit, branch, division and Agency in which you are currently employed.  If less than two years provide information regarding previous employment.
A:  Special Agent in Charge (SAC) of the Washington Field Office (WFO) Office of the Inspector General, U.S. Department of Justice.  1300 North 17th Street, Suite 3200, Arlington, Virginia 22209.  (Retired December 31, 2005)

1

Initials

Q: What is your job title, grade and series?
A: SAC (Criminal Investigator), GS-15, 1811 (retired).

Q: How long have you been in that position?
A: I was promoted to the position of Acting SAC effective November 23, 1997. My promotion to the WFO SAC position was effective August 30, 1998.

Q: How long had you worked at DOJ?
A: 16 years, 2 months.

Q: What is the name and title of your first line supervisor, and how long were you under their supervision? If less than two years provide information regarding previous supervisor.
A: From approximately November 1997 to December 2005, my first line supervisor was (then) Deputy Assistant Inspector General for Investigations (DAIGI) Thomas F. McLaughlin. My second line supervisor was Assistant Inspector General for Investigations (AIGI) Thomas Bondurant. Subsequently, AIGI Bondurant retired and Mr. McLaughlin was promoted to AIGI. At that time, Mr. George Dorsett became the DAIGI and my first line supervisor, and AIGI McLaughlin became my second line supervisor.

Q: What is the name and title of your second line supervisor, and how long were you under their supervision? If less than two years provide information regarding previous supervisor.
A: See answer above.

Q: State your Race.
A: White.

Q: State your DOB.
A: [ ]

Q: Do you know the Complainant, Mark Alton Pendleton? If so, when did you become acquainted with him and in what capacity have you known him; i.e., co-worker, subordinate, and/or personal friend?
A: Yes. I have known Mr. Pendleton since the fall of 1989. We have served as co-workers and in a supervisor-subordinate relationship.

2                                                        Initials _____

Q: In what capacity were you involved in the selection process for the GS-14 Senior Criminal Investigator positions advertised in Vacancy Announcement number OIG-2005-05?
A: I served as part of a three member panel that conducted the candidate interviews.


Q: How many positions were filled from Vacancy Announcement number OIG-2005-05 and where were the positions located?
A: Two positions were filled in the OIG's Washington Field Office.


Q: Who did you recommend or select for the position(s) and what were your reasons?
A: In accordance with a December 17, 2004 memorandum from Assistant Inspector General for Investigations Thomas McLaughlin (attached), the panels were instructed to rank the candidates based on the following selection criteria: investigative abilities (including prior investigative experience and accomplishments), leadership experience and abilities, interpersonal skills, character and integrity, timeliness, oral and written communication skills, and prior investigative recognition.

First, each of the panel members thoroughly reviewed the application packages for each of the candidates, including their past employment histories, their supervisory or leadership experience, their investigative accomplishments and awards, and their written summaries regarding their relevant Knowledge, Skills, and Abilities for the SSA position. The panel members independently interviewed each of the candidates' supervisors regarding their strengths and weaknesses. (For Mr. Pendleton, the panel members interviewed Assistant Special Agent in Charge [ASAC] Ron Powell). The panel then interviewed each of the candidates with a standard set of questions specifically related to the above selection factors. Following the interviews, the panel members separately and independently ranked the eight Senior Special Agent (SSA) candidates in order, based on the aforementioned criteria, including their logic and persuasiveness in presenting their experience and abilities during the interview.

All three panel members, including ASAC William Johnson (Headquarters Investigations Division), ASAC John Oleskowicz (Chicago Field Office), and I independently ranked the first five candidates in the same order and the last three candidates in slightly different order. Our panel ranked the first five candidates in the following order: **Michael P. Tompkins, Scott A. Myers, Michael W. Fletcher, Mark A. Pendleton, and Steven A. Carrera.**

Q: What is the Race of the selectee(s)?
A: I believe they are both Caucasian.

3

Initials 

Q: What is the age of the selectee(s)?
A: I do not know their ages.


Q: Did the selectee(s) have any prior EEO activity?
A: Not to my knowledge.


Q: Was the complainant on the referral for this vacancy announcement?
A: Yes.


Q: Did you interview the complainant for this/these position(s)? If not, why not?
A: Yes.


Q: What were the selection criteria you used in making your decision to recommend or select for this/these position(s)?
A: See my response above regarding the panel's recommendations and the reasons in support.


Q: What was your reason for not recommending or not selecting the complainant?
A: I did not recommend against Mr. Pendleton and in fact considered him as an "above average candidate." However, the two selectees were clearly better qualified for the needs of the SSA position than Mr. Pendleton. As I summarized in my March 16, 2005 memorandum to Assistant Inspector General Thomas McLaughlin regarding "WFO Senior Special Agent interviews", Scott Myers had over 27 years of law enforcement experience, including 20 years with the U.S. Secret Service and five years with the Atlanta City Police Department. Mr. Myers had extensive experience in criminal investigations in large and small offices. He served as the Resident Agent in Charge of the Secret Service Tulsa, OK Resident Agency where he was responsible for supervising a three-agent office with two clerical staff. He coordinated, assigned, or conducted criminal investigations in addition to being responsible for domestic terrorism issues in the wake of the OK City bombing. In his last assignment with the Secret Service he served as an ASAC (GS-14) in the Forensic Services Division for four years. He was responsible for the day-to-day management of the 35-member polygraph program. During his tenure with the OIG, Mr. Myers had conducted numerous interviews of high ranking FBI officials nationwide and conducted extensive document review and analysis. Mr. Myers was at that time conducting a complex FBI whistleblower investigation based on allegations of retaliation and nonfeasance of duty against several high-level FBI officials. During his interview for the SSA position, Mr. Myers projected a command presence and was exceptionally articulate. He displayed both the understanding and the application of all of the requisite SSA traits, with particular strength in the areas of leadership, interpersonal skills and organization.

4

Initials

The second selectee, Mr. Michael Fletcher, had over 23 years of law enforcement experience, including 21 years with the U.S. Secret Service. Mr. Fletcher had a strong criminal investigative background, having served in the Secret Service offices in Washington, DC, Miami, Florida, New York City, and Paris, France. While assigned to the American Embassy in Paris from 1998-2002, Mr. Fletcher was responsible for investigations (especially in the area of financial crimes) and issues of U.S. Government interest in a number of countries to include the former Soviet countries of Moldova, Belarus, and Latvia. Upon his return to the United States he was promoted to Assistant to the Special Agent in Charge (GS-14) of the Secret Service Washington Field Office where he supervised 20 special agents. Since arriving at the OIG, Mr. Fletcher had handled a number of priority investigations involving the FBI, the DEA and the U.S. Marshals Service. During his interview for the SSA position, Mr. Fletcher projected a mature and professional image. He displayed a sense of self confidence while fielding a wide range of difficult questions.

As referenced above, the panel considered Mr. Pendleton to be an above-average candidate with over 25 years of law enforcement experience with three Inspector General offices and the Federal Protective Service. We also considered that Mr. Pendleton had a great amount of institutional knowledge of the DOJ OIG, and had willingly worked a wide range of investigations. However, it was significant that Mr. Pendleton lacked any substantive supervisory or leadership experience, while both of the selectees had considerable supervisory experience. Further, Mr. Pendleton's supervisor believed that he still needed to enhance his writing and organizational skills. Finally, the panel members noted that during his interview for the SSA position, Mr. Pendleton projected a professional image, but failed to fully answer several questions, and at times, seemed to ramble.

Q: Did you ever communicate to the complainant your reasons for not recommending or not selecting the complainant? If so, when, how and what did you tell him?
A: No. Following the panel interviews various individuals asked me if I knew when a selection would be made and my initial response was "probably within 2 to 3 weeks."

Q: What qualifications did the selectee(s) have that were better than the complainant's?
A: See my answer above below regarding the reasons for recommending the selectees over the complainant.

Q: Were race, age or prior EEO activity factors in consideration of who to recommend or select for this/these position(s)? If so, explain.
A: No. In Mr. Pendleton's interrogatory he asserts that my knowledge of his prior EEO activity was a factor in his non-selection for the SSA position(s). This is absolutely not true.

5                                                    Initials _____

Q: Do you have any documents you wish to provide?  If so, please provide a list identifying the documents, number each page and affix your initials to the first page of each document.
A:  No.


Q:  Is there anything you would like to add to your statement?
A:  No.


Pursuant to Title 28 U.S.C. _ 1746, I declare, under penalty of perjury, that the foregoing statement is true and correct to the best of my recollection.  I understand the information I have given is not to be considered confidential and that it may be disclosed to authorized parties.

_____
Affiant's signature

2-28-06
_____
Date

6

Initials _____

**PRIVACY ACT NOTICE TO COMPLAINT INTERVIEW WITNESSES**
**(OTHER THAN COMPLAINANT)**
**FOR EMPLOYMENT DISCRIMINATION COMPLAINT INVESTIGATIONS**
**GENERAL**

This information is provided pursuant to Public Law 93-579 (Privacy Act of l974) December 31, 1974 for individuals supplying information for inclusion in a system of records.

**AUTHORITY**

The authority to collect the information requested by this interview is derived from one or more of the following:

Tide 5, Code of Federal Regulations. Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, (United States Code, Section 2000e-16; Executive Order 11418, as amended.

**PURPOSES AND USES**

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed to any agency of the Federal Government having a working relationship with regards to EEO Commission activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

**EFFECTS OF NONDISCLOSURE**

Disclosure of the information sought is voluntary. However, failure on the part of Department of Justice employees to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you, up to and including termination. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_CHARLES T. HUGGINS_
Type or print name of witness

_Charles T. Huggins_
Signature of Witness (Person providing statement)

_3-15-06_
Date

_Roslyn, VA_
Location

## normawhite

| | |
|---|---|
| **From:** | <Marcus.Williams@usdoj.gov> |
| **To:** | <JANEBREDMON@aol.com> |
| **Sent:** | Friday, May 19, 2006 8:52 AM |
| **Subject:** | RE: Information for Pendleton, B-05-2536 |

Jane,

We don't have a record of previous activity for the persons named below.

MW

-----Original Message-----
From: JANEBREDMON@aol.com [mailto:JANEBREDMON@aol.com]
Sent: Thursday, May 18, 2006 3:09 PM
To: Williams, Marcus (EEO)
Cc: normawhite@ccconline.net
Subject: Information for Pendleton, B-05-2536

Marcus,

Norma is almost completed with the review of the Pendleton investigation.
However, we need to ascertain whether or not any of the RMOs have had previous
EEO activity. Would you ask someone to obtain this information? Their names
are:
1.   Thomas F. McLaughlin
2.   Charles T. Huggins
3.   William F. Johnson
4.   John F. Oleskowicz
5.   Gene E. Morrison

Thanks, Jane

Jane Redmon, General Manager/Chief Reviewer
Adept Services, Inc.
voice    703-931-5519
fax       703-671-0854
email    JaneBRedmon@aol.com

5/21/2006



**U. S. Department of Justice**

Office of the Inspector General

Washington Field Office        202-616-4766 (PHONE)
1300 North 17th Street Suite 3200   202-616-9884 (FAX)
Arlington, VA 22209

March 16, 2005

MEMORANDUM

TO:                      Thomas F. McLaughlin
                         Assistant Inspector General
                         For Investigations


FROM:                    Charles T. Huggins
                         Special Agent in Charge
                         Washington Field Office

SUBJECT:                 WFO Senior Special Agent Interviews


        Reference is made to your memorandum dated December 23, 2004 regarding additional Senior Special Agent (SSA) positions for the Investigations Division.

        Vacancy announcement number OIG-2005-05 opened on January 17, 2005 and closed on February 4, 2005. Eight special agents applied for the WFO vacancy and were referred to WFO to be interviewed. ASAC William F. Johnson, Headquarters, ASAC John F. Oleskowicz, CFO, and I were selected to conduct the panel interviews. The interviews were conducted at WFO on February 28, 2005, March 2, 2005 and March 7, 2005 in person and via teleconferencing and telephone.

        Prior to the interviews each panel member reviewed the candidate's applicant packet and discussed their strengths and weaknesses with their individual supervisor(s). While the panel wanted to give veteran OIG agents appropriate credit for their dedication and their accomplishments at the OIG, we did not want to shortchange those candidates who had strong law enforcement experience and qualifications, but less OIG experience. Accordingly, we have based our rankings of the below listed candidates on the totality of their law enforcement work history, their life experiences, knowledge of their performance at the OIG, and their responses to the standard set of questions, including their logic and persuasiveness in presenting their answers.

        At the onset of each interview I explained to each candidate that the SSA position was created to identify highly motivated and qualified personnel to assist management functions of the Investigations Division. Further that SSAs are expected to personally conduct, coordinate and/or lead difficult and sensitive investigations, assist with work quality reviews (which may provide support for official performance evaluations), and to help formulate and implement policy. I told each of them that it is particularly important

that the person selected possess outstanding investigative skills, as well as leadership
traits. Lastly, I told them that the purpose and focus of their interview was to elicit
information that would provide insights in determining whether they possessed the
necessary skills and leadership traits required of an SSA.

During their interviews, each of the eight candidates were asked the exact same
thirteen questions – which none of them had seen before – and which were relevant to the
leadership traits required of an SSA. These questions also assessed the candidates' poise
and ability to give coherent presentations in a high-pressure situation, which was
indicative of their potential performance in high-level briefings before the Inspector
General and other high-level Department officials. Finally, the interview provided
insight into the candidates' leadership qualities – i.e., their ability to express themselves
forcefully in a high-pressure situation.

Following the interviews, the panel members separately and independently
summarized our impressions of each candidate, and ranked the candidates in order, based
on their interview responses, as well as the aforementioned factors. ASACs Johnson,
Oleskowicz and I independently ranked the first five candidates in the same order and the
last three candidates in slightly different order. Our panel ranked the candidates in the
following order: **Michael P. Tompkins, Scott A. Myers, Michael W. Fletcher, Mark
A. Pendleton, Steven A. Carrera, Dorothy M. Wortham, David E. Trosch and
Thomas A. Gibson.**

First choice, **Michael P. Tompkins,** is considered an outstanding candidate. Mr.
Tompkins has over 20 years of law enforcement experience with the DOJ/OIG and Naval
Criminal Investigative Service (NCIS). Mr. Tompkins served in a wide range of
assignments with NCIS to include Acting Resident Agent in Charge of the Camp
Pendleton, CA Resident Agency. This office is the largest NCIS office in the Western
U.S. He supervised three subordinate offices in Southern California and Western
Arizona with twenty seven field agents and six support personnel. In his last assignment
with NCIS, Mr. Tompkins was temporarily promoted to ASAC (GS-14), San Diego Field
Office (SDFO) responsible for the Initiative/Special Operations Squad supervising forty
three Special Agents, two subordinate supervisors, two computer specialists and one
administrative support employee. Since joining the OIG Mr. Tompkins served in the
SDFO before transferring to WFO in July 2003. Since arriving at WFO he has completed
seven complex priority investigations and several other cases. He has been assigned as
the Acting ASAC providing operational guidance to the agents and conducting case
reviews. In his most recent yearly evaluation his ASAC identified him as a top-
performer in the office and someone who could be tasked with the most difficult and
challenging investigative assignments. During his interview for the SSA position, Mr.
Tompkins projected a command presence while providing answers that were both

Thomas F. McLaughlin
Page 3

thoughtful and well reasoned.  He has a depth of experience, interpersonal skills, and organizational abilities that suggest he will be able to assume the responsibilities of the SSA in an outstanding manner.

Second choice, **Scott A. Myers,** is considered an outstanding candidate.  Mr. Myers has over 26 years of law enforcement experience including one year with the OIG, 20 years with the U.S. Secret Service and five years with the Atlanta City Police Department.  Mr. Myers has extensive experience in criminal investigations in large and small offices.  He served as the Resident Agent in charge of the Tulsa, OK Resident Agency where he was responsible for supervising a three agent office with two clerical staff.  He coordinated, assigned, or conducted criminal investigations in addition to being responsible for domestic terrorism issues in the wake of the OK City bombing.  In his last assignment with the Secret Service he served as an ASAC (GS-14) in the Forensic Services Division for four years.  He was responsible for the day to day management of the 35 member polygraph program.  Mr. Myers is currently conducting a complex FBI whistleblower investigation based on allegations of retaliation and nonfeasance of duty against several high-level FBI officials.  Mr. Myers has conducted numerous interviews of high ranking FBI officials nationwide and conducted extensive document review and analysis.  During his interview for the SSA position, Mr. Myers projected a command presence and was exceptionally articulate.  He displayed both the understanding and the application of all of the requisite SSA traits, with particular strength in the areas of leadership, interpersonal skills and organization.

Third choice, **Michael W. Fletcher,** is considered an outstanding candidate.  Mr. Fletcher has over 22 years of law enforcement experience including one year with the OIG and 21 years with the U.S. Secret Service.  Mr. Fletcher has a strong criminal investigative background having served in Secret Service offices in Washington, DC, Miami, FL, New York City, NY and Paris, France.  While assigned to the American Embassy in Paris, France, from 1998-2002, he was responsible for investigations (especially in the area of financial crimes) and issues of Secret Service interest in a number of countries to include the former Soviet countries of Moldova, Belarus, and Latvia.  Upon his return to the United States he was promoted to Assistant to the Special Agent in Charge (GS-14) of the Washington Field Office where he supervised 20 special agents.  Since arriving at WFO Mr. Fletcher has handled a number of FBI, DEA and U.S. Marshals Service priority investigations.  During his interview for the SSA position, Mr. Fletcher projected a mature and professional image.  He displayed a sense of self confidence while fielding a wide range of difficult questions.  He possesses the leadership traits required of an SSA.

Thomas F. McLaughlin
Page 4

Fourth choice, **Mark A. Pendleton,** is considered an above average candidate. Mr. Pendleton has over 25 years of law enforcement experience with the DOJ/OIG, GPO/OIG, AG/OIG and the Federal Protective Service. Mr. Pendleton possesses a great amount of institutional knowledge about the DOJ/OIG but lacks any substantive supervisory experience. Although he has willingly worked a wide range of investigations while assigned to the OIG he continues to require further enhancement in his writing and organizational skills. During his interview for the SSA position, Mr. Pendleton projected a professional image but failed to fully answer several questions, and at times, appeared to ramble.

Fifth choice, **Steven M. Carrera,** is considered an above average candidate. Mr. Carrera has over 14 years of law enforcement experience with the DOJ/OIG and the Department of State OIG. Mr. Carrera has worked a wide range of investigations while assigned to the OIG to include the last year and a half on the Smith-Leung FBI espionage review. Mr. Carrera lacks any substantive supervisory experience and needs to improve in the area of attention to detail. During his interview for the SSA position, Mr. Carrera projected a professional image; however, his oral presentation skills were lacking.

Sixth choice, **Dorothy M. Wortham,** is considered an average candidate. Ms. Wortham has over 13 years of law enforcement experience with the DOJ/OIG and AG/OIG. She is approaching 2 years in grade at the GS-13 level. She has worked a wide range of investigations since being assigned to the OIG; however, she does not work well on her own. During her interview for the SSA position, Ms. Wortham projected a professional image but appeared nervous and struggled in her oral responses to the panel's question. Ms. Wortham would be an ideal candidate for the Leadership Development Program.

Seventh choice, **David E. Trosch,** is considered an average candidate. Mr. Trosch has 11 years of law enforcement experience with the DOJ/OIG and DCIS. He is presently assigned to the Fraud Detection Office (FDO) and has not been assigned to work a priority investigation. In his last assignment with DCIS he served in the Computer Evidence Recovery Program as a Program Manager (GS-14). Prior to his assignment to the FDO, in April of 2004, Mr. Trosch had not worked an investigation as the lead case agent since July 1998. During his interview for the SSA position, Mr. Trosch projected a professional image and while his answers were thoughtful and articulate they lacked substance.

Eighth choice, **Thomas A. Gibson,** is considered an average candidate. Mr. Gibson has more than 20 years of experience as a criminal investigator and 7 years as a uniformed U.S. Secret Service police officer. Mr. Gibson has served as an agent with the IRS, DCIS, Postal Service Inspector General and the DOJ/OIG. He is presently assigned to the FDO and has not been assigned to work a priority investigation. During his interview for the SSA position, Mr. Gibson projected a professional image; however, the panel felt that his answers to the standard set of questions lacked substance.

December 17, 2004

MEMORANDUM FOR ALL SPECIAL AGENTS IN CHARGE

FROM:                    THOMAS F. MCLAUGHLIN
                         ASSISTANT INSPECTOR GENERAL
                            FOR INVESTIGATIONS

SUBJECT:                 Senior Special Agent Program

        Recently, Inspector General Glenn A. Fine approved additional Senior
Special Agent (SSA) positions for the Investigations Division. The increase in
positions will enable the Division to build on the existing program and employ
the team approach in priority investigations and other key initiatives. At the
same time, the Division will be better positioned to rely on a highly motivated
staff of senior, non-supervisory agents to regularly handle the most difficult
assignments and to assist in the overall management of the Division.

        Vacancy announcements for the new SSA positions will be published
shortly. All interested special agents are encouraged to apply for positions in
their own office as well as in offices around the country.

        As set forth below, new interview procedures are being instituted to help
ensure the selection of the best-qualified candidates to fill SSA vacancies. They
are as follows:

  • A three-member panel will be selected to interview all candidates for the
    position of SSA. While the individual members may vary, the panel's
    core composition will remain the same. In most instances, the panel will
    consist of the Special Agent in Charge (SAC) from the office where a
    vacancy exits, a manager from another OIG field office, and a manager
    from Headquarters.

  • The three-member panel will interview each candidate, using a set of 25
    pre-determined questions (attached). Candidates will be asked to
    respond to questions intended to help evaluate a person's investigative
    skills and leadership traits. During the interview, each panel member
    will be required to take notes. At the end of the process, the SAC should
    forward the notes to Headquarters for retention.

5

- On completing the interviews, the SAC will submit a memorandum to the Assistant Inspector General, Investigations Division, with the panel's recommendation of the best-qualified candidate for the SSA position. In the memorandum, the SAC should identify the date and place of the interviews, the names of the panel members, the names of the candidates who were interviewed and their rank order, and the name of the individual who is being recommended for promotion to the SSA position. Additionally, the SAC should briefly explain the basis for recommending the candidate, to include a discussion of the investigative skills and leadership traits that set the candidate apart from other applicants.

In closing, I ask for your full cooperation in this important process so that we – the Investigations Division – are able to select the best-qualified, ideally suited, and highly motivated candidates for the position of Senior Special Agent.

Please share this memorandum with your employees. The attached set of questions should not be shared except with your management team.

Attachment

# Candidate Questions - Senior Special Agent

The position of Senior Special Agent (SSA) was created to identify highly motivated and qualified personnel to assist with the management functions of the Investigations Division. Senior Special Agents are expected to personally conduct, coordinate and/or lead difficult and sensitive investigations, assist with work quality reviews (which may provide support for official performance evaluations), and to help formulate and implement policy. It is particularly important that the persons selected possess outstanding investigative skills, as well as leadership traits.

The purpose and focus of this interview is to elicit information that will provide insights in determining whether you possess the necessary investigative skills and the leadership traits required of an SSA.

## Investigative Abilities – *ability to recognize all appropriate issues requiring investigation, to develop an effective investigative work plan, to efficiently obtain the information to resolve the investigative issues, and to summarize investigative findings in a clear and concise written and oral format.*

Question 1: Explain the steps you take to conduct thorough, yet objective, investigations.

Question 2: How do you feel about the OIG's current assignment and handling of priority investigations? As an organization, are we going about them in the right way? What improvements, if any, would you suggest?

Question 3: Tell us about the priority cases you have worked, and how that experience is relevant to working as an SSA.

Question 4: How would you organize a team to work a priority investigation?

Question 5: In reviewing and editing investigative reports, what do you feel is most important?

Question 6: How would you avoid showing bias and opinion in OIG reports?

Question 7: In conducting case reviews, what would you look for in assessing the quality and timeliness of investigations?

<u>Question 8</u>:  In deciding which allegations the OIG should investigate, what factors would you consider?

<u>Question 9</u>:  What are your strengths and weaknesses as an agent? [*Note: Prior to the interview, the panel members should discuss each applicant's abilities in this area with the applicant's supervisor(s).  During the interview the panel should examine the applicant's strengths and weaknesses as they relate to their ability to be successful SSAs.*]

## **Leadership** - *ability to motivate, instruct, inspire, guide, mentor, and encourage positive actions.*

<u>Question 10</u>:  What leadership traits do you admire and why?

<u>Question 11</u>:  Tell us about investigations you have led or other leadership roles you have played.

<u>Question 12</u>:  How would you set an example for members of your team?

<u>Question 13</u>:  How would you handle a situation in which you were asked to help implement an OIG policy you disagreed with?

<u>Question 14</u>:  Faced with factions and divisive behavior in an office, what would you do to bring about change?

## **Interpersonal Skills** - *ability to work well with others and achieve mutual respect.*

<u>Question 15</u>:  What strategies would you use in order to work effectively with someone you do not like?

<u>Question 16</u>:  How do you earn the respect and loyalty of others?

<u>Question 17</u>:  How would you deal with agents on your team who were not pulling their share of the load?

## **Character/Integrity** - *the personal qualities that distinguish one as ethical, honest, truthful, impartial, and fair.*

<u>Question 18</u>:  How do you define integrity?  Individually, what steps do you take to safeguard your integrity?

Question 19:  What qualities do you admire in a person?

**Timeliness** - *the initiation and completion of tasks within an acceptable period of time.*

Question 20:  What strategies have you used to manage your time more efficiently?

Question 21:  How would you improve the timeliness of OIG investigations?


## Communication (Oral and Written)

Question 22:  Describe your public speaking skills.  Tell us about special presentations in which you have used these skills.

Question 23:  What feedback do you get on your written reports?


## Recognition and Accomplishments

Question 24:  Tell us about awards and other special recognition you have received and how you earned them.


## Summation

Question 25:  There are a number of qualified candidates for the position of Senior Special Agent.  Why should the Investigations Division select you over other qualified agents?

9

UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF INSPECTOR GENERAL
REPORT OF INVESTIGATION

| | | |
|---|---|---|
| Mark Alton Pendleton | * | |
| | * | |
| Complainant, | * | |
| | * | |
| | * | Docket Number B-05-2536 |
| Office of Inspector General | * | |
| U.S. Department of Justice | * | |
| Washington, D.C. | * | |
| | * | |
| Agency. | * | |

---

### INTERROGATORY FOR (William F. Johnson)

---

For the record.  In a letter dated September 1, 2005, from Ted McBurrows,
Director, EEO Staff, Justice Management Division, DOJ, to Complainant's
representative, Mr. Robert Seldon, the following was accepted for investigation:

Complainant alleges that because of his race (Black), age (49) and reprisal,
he was not selected for one of two GS-14 Senior Criminal Investigator positions
(Vacancy number OIG-2005-05).

Q: Please provide your full name for the record.
A:  William F. Johnson.

Q:  Do you have a representative?  If so, identify the representative to include
business address and phone number (if federal employee, position, series, and
grade).
A:  No.

1                                    Initials _W̶F̶J̶_

Q:  Please state the unit, branch, division and Agency in which you are currently employed.  If less than two years provide information regarding previous employment.
A:  Department of Justice – Office of the Inspector General – Headquarters – Special Operations Branch.


Q:  What is your job title, grade and series?
A:  Assistant Special Agent in Charge – Special Operations Branch – GS - 14


Q:  How long have you been in that position?
A:  Approximately 4 1/2 years.


Q:  How long had you worked at DOJ?
A:  8 ½ years – EOD July of 1997.


Q:  What is the name and title of your first line supervisor, and how long were you under their supervision?  If less than two years provide information regarding previous supervisor.
A:  Glenn Powell – the last 6 months.  George Dorsett – previous 8 years.


Q:  What is the name and title of your second line supervisor, and how long were you under their supervision?  If less than two years provide information regarding previous supervisor.
A:  C. Thomas Huggins – 1997 to 2001.  Thomas McLaughlin 2001 to the present.


Q:  State your Race.
A:  Caucasian.


Q:  State your DOB.

Initials *WFL*

Q:  Do you know the Complainant, Mark Alton Pendleton?  If so, when did you become acquainted with him and in what capacity have you known him; i.e., co-worker, subordinate, and/or personal friend?

A:  I first met Mark Pendleton when I started with the DOJ/OIG in July of 1997.  From that time to the present, I have known Mark as a friend, co-worker and subordinate.

Q: In what capacity were you involved in the selection process for the GS-14 Senior Criminal Investigator positions advertised in Vacancy Announcement number OIG-2005-05?

A:  I was a member of a 3 member panel which reviewed applications and conducted interviews of a group of eight candidates for Vacancy Announcement number OIG-2005-05.

Q: How many positions were filled from Vacancy Announcement number OIG-2005-05 and where were the positions located?

A:  Two vacancies were announced and filled.  They were both in the Washington Field Office – Washington D.C.

Q: Who did you recommend or select for the position(s) and what were your reasons?

A:  I did not specifically recommend or select anyone for the positions.  After reviewing the application packages and interviewing the candidates, each of the panel members independently ranked the candidates from most qualified to least qualified.  When we compared our rankings, they matched for the first four or five rankings.  In particular, we all felt that the top three candidates were superior in terms of supervisory investigative experience.

Q: What is the race of the selectee(s)?

A:  I believe they are Caucasian.

Q: What is the age of the selectee(s)?

A:  I do not know.

Initials _WRL_

Q: Did the selectee(s) have any prior EEO activity?
A:  Not to my knowledge.


Q: Was the complainant on the referral for this vacancy announcement?
A:  YES


Q: Did you interview the complainant for this/these position(s)?  If not, why not?
A:  YES


Q: What were the selection criteria you used in making your decision to recommend or select for this/these position(s)?
A:  The panel members were asked to rank the candidates based on an overall assessment of their investigative and leadership abilities, including consideration of:  investigative skills, leadership abilities, interpersonal skills, character and integrity, timeliness in completing investigative tasks, the quality of their oral and written communications, and their prior investigative accomplishments and recognitions.

In order to make these assessments, we reviewed the employment application packages of each of the eight candidates, including their academic, employment, and investigative backgrounds and accomplishments, as well as their KSA submissions for the vacant positions.  We then interviewed each of these applicants, posing the same standard set of questions to all candidates. We then considered all of these factors in assigning an overall ranking to each of the candidates.


Q: What was your reason for not recommending or not selecting the complainant?
A:  I did not recommend either for or against Mr. Pendleton.  Rather, based on the aforementioned factors, I simply ranked him along with all of the candidates, from most qualified to least.  I ranked Mr. Pendleton 4th among the eight candidates.

Initials *WPJ*

Q: Did you ever communicate to the complainant your reasons for not recommending or not selecting the complainant? If so, when, how and what did you tell him.
A: NO

Q: What qualifications did the selectee(s) have that were better than the complainant's?
A: Those candidates that were ranked above the complainant had more investigative experience and also had extensive supervisory and managerial experience with other major law enforcement agencies.

Q: Were race, age or prior EEO activity factors in consideration of who to recommend or select for this/these position(s)? If so, explain.
A: NO

Q: Do you have any documents you wish to provide? If so, please provide a list identifying the documents, number each page and affix your initials to the first page of each document.
A: NO

Q: Is there anything you would like to add to your statement?
A: NO

Pursuant to Title 28 U.S.C. _ 1746, I declare, under penalty of perjury, that the foregoing statement is true and correct to the best of my recollection. I understand the information I have given is not to be considered confidential and that it may be disclosed to authorized parties.

_____
Affiant's signature

_2-17-06_____
Date

5                                    Initials _W F_

**PRIVACY ACT NOTICE TO COMPLAINT INTERVIEW WITNESSES**
**(OTHER THAN COMPLAINANT)**
**FOR EMPLOYMENT DISCRIMINATION COMPLAINT INVESTIGATIONS**
**GENERAL**

This information is provided pursuant to Public Law 93-579 (Privacy Act of l974) December 31, 1974 for individuals supplying information for inclusion in a system of records.

**AUTHORITY**

The authority to collect the information requested by this interview is derived from one or more of the following:

Tide 5, Code of Federal Regulations. Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, (United States Code, Section 2000e-16; Executive Order 11418, as amended.

**PURPOSES AND USES**

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed to any agency of the Federal Government having a working relationship with regards to EEO Commission activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

**EFFECTS OF NONDISCLOSURE**

Disclosure of the information sought is voluntary. However, failure on the part of Department of Justice employees to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you, up to and including termination.  Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

William F. Johnson
Type or print name of witness

Signature of Witness (Person providing statement)

3-10-06
Date

Washington, D.C.
Location

## normawhite

| | |
|---|---|
| **From:** | <Marcus.Williams@usdoj.gov> |
| **To:** | <JANEBREDMON@aol.com> |
| **Sent:** | Friday, May 19, 2006 8:52 AM |
| **Subject:** | RE: Information for Pendleton, B-05-2536 |

Jane,

We don't have a record of previous activity for the persons named below.

MW

-----Original Message-----
From: JANEBREDMON@aol.com [mailto:JANEBREDMON@aol.com]
Sent: Thursday, May 18, 2006 3:09 PM
To: Williams, Marcus (EEO)
Cc: normawhite@ccconline.net
Subject: Information for Pendleton, B-05-2536

Marcus,

Norma is almost completed with the review of the Pendleton investigation.
However, we need to ascertain whether or not any of the RMOs have had previous
EEO activity.  Would you ask someone to obtain this information?  Their names
are:
1.  Thomas F. McLaughlin
2.  Charles T. Huggins
3.  William F. Johnson
4.  John F. Oleskowicz
5.  Gene E. Morrison

Thanks, Jane

Jane Redmon, General Manager/Chief Reviewer
Adept Services, Inc.
voice    703-931-5519
fax      703-671-0854
email    JaneBRedmon@aol.com

5/21/2006

UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF INSPECTOR GENERAL
REPORT OF INVESTIGATION

| | | |
|---|---|---|
| Mark Alton Pendleton | * | |
| | * | |
| Complainant, | * | |
| | * | |
| | * | Docket Number B-05-2536 |
| Office of Inspector General | * | |
| U.S. Department of Justice | * | |
| Washington, D.C. | * | |
| | * | |
| Agency. | * | |

---

INTERROGATORY FOR JOHN F. OLESKOWICZ

---

For the record.  In a letter dated September 1, 2005, from Ted McBurrows, Director, EEO Staff, Justice Management Division, DOJ, to Complainant's representative, Mr. Robert Seldon, the following was accepted for investigation:

Complainant alleges that because of his race (Black), age (49) and reprisal, he was not selected for one of two GS-14 Senior Criminal Investigator positions (Vacancy number OIG-2005-05).

Q: Please provide your full name for the record.
A:  John F. Oleskowicz.

Q:  Do you have a representative?  If so, identify the representative to include business address and phone number (if federal employee, position, series, and grade).
A:  No.

Initials

Q:  Please state the unit, branch, division and Agency in which you are currently employed.  If less than two years provide information regarding previous employment.
A:   Chicago Field Office, Investigations Division, Office of the Inspector General, DOJ.


Q:  What is your job title, grade and series?
A:  Supervisory Special Agent / Assistant Special Agent in Charge, GS-14, 1811.


Q:  How long have you been in that position?
A:   Approximately 5 years.


Q:  How long had you worked at DOJ?
A:   Since 1985.


Q:  What is the name and title of your first line supervisor, and how long were you under their supervision?  If less than two years provide information regarding previous supervisor.
A:   Edward M. Dyner, Special Agent in Charge, Chicago Field Office, since 1996.


Q:  What is the name and title of your second line supervisor, and how long were you under their supervision?  If less than two years provide information regarding previous supervisor.
A:   George L. Dorsett, Deputy Assistant Inspector General for Investigations, since November 1, 2004.  Prior to that, it was Thomas F. McLaughlin, AIGI.


Q:  State your Race.
A:  White/Caucasian.


Q:  State your DOB.

2

Initials

Q:  Do you know the Complainant, Mark Alton Pendleton?  If so, when did you become acquainted with him and in what capacity have you known him; i.e., co-worker, subordinate, and/or personal friend?
A:   Yes.  I became acquainted with him in January 1990 at the first OIG Orientation class, after the OIG was established in 1989.  I have known him in the capacity of a co-worker and professional associate.


Q: In what capacity were you involved in the selection process for the GS-14 Senior Criminal Investigator positions advertised in Vacancy Announcement number OIG-2005-05?
A:  I was assigned to be a member of the candidate interviewing team for the Senior Special Agent Vacancy(s) at the Washington Field Office.  In that capacity, for each of the eight candidates, I was asked to:  review the application packages, briefly interview the candidates' immediate supervisors, and then participate in the interviews of the candidates.


Q: How many positions were filled from Vacancy Announcement number OIG-2005-05 and where were the positions located?
A:  Two positions were filled in the Washington Field Office from the Vacancy Announcement.


Q: Who did you recommend or select for the position(s) and what were your reasons?
A:  Based on the education, depth of experience, leadership qualities and interpersonal skills of the candidates, I independently ranked Michael Tompkins, Scott Myers, Michael Fletcher, Mark Pendleton and Steven Carrera as the top 5 candidates for the position(s), in that order.  During subsequent discussions, I discovered that the other interviewing team members ranked the top five candidates in the same order.  I understand that Scott Myers and Michael Fletcher were ultimately chosen for the SSA positions by the selecting official.  Mr. Tompkins was selected for a supervisory position (ASAC) which he applied for in another office.


Q: What is the Race of the selectee(s)?
A:  Both selectees are White/Caucasian.


3

Initials

Q: What is the age of the selectee(s)?
A:  I do not know the selectees' ages, but believe them both to be in their later forties.


Q: Did the selectee(s) have any prior EEO activity?
A:  I have no knowledge of this.


Q: Was the complainant on the referral for this vacancy announcement?
A:  Yes.


Q: Did you interview the complainant for this/these position(s)?  If not, why not?
A:  Yes.  I participated in the candidate interviews via teleconferencing.


Q: What were the selection criteria you used in making your decision to recommend or select for this/these position(s)?
A:  The criteria that I used to recommend the candidates for the positions were education, depth of experience, leadership qualities, and interpersonal skills.


Q: What was your reason for not recommending or not selecting the complainant?
A:  From the list of candidates interviewed, I ranked/recommended the complainant as fourth among the eight candidates and considered him to have above average qualifications for the position.  I was not involved in the final selection process.


Q: Did you ever communicate to the complainant your reasons for not recommending or not selecting the complainant?  If so, when, how and what did you tell him.
A:  No.

4                                                    Initials

Q: What qualifications did the selectee(s) have that were better than the complainant's?

A:  The selectees had extensive law enforcement and investigative experience that included significant prior supervisory and leadership roles.  The top three candidates had all previously been supervisory GS-14s.

Q: Were race, age or prior EEO activity factors in consideration of who to recommend or select for this/these position(s)?  If so, explain.

A:  No.

Q: Do you have any documents you wish to provide?  If so, please provide a list identifying the documents, number each page and affix your initials to the first page of each document.

A:  No.

Q:  Is there anything you would like to add to your statement?

A:  No.

Pursuant to Title 28 U.S.C. 1746, I declare, under penalty of perjury, that the foregoing statement is true and correct to the best of my recollection.  I understand the information I have given is not to be considered confidential and that it may be disclosed to authorized parties.

_____
Affiant's signature

_____
Date  2/13/06

5                                    Initials ____

**PRIVACY ACT NOTICE TO COMPLAINT INTERVIEW WITNESSES
(OTHER THAN COMPLAINANT)
FOR EMPLOYMENT DISCRIMINATION COMPLAINT INVESTIGATIONS**

**GENERAL**

This information is provided pursuant to Public Law 93-579 (Privacy Act of l974) December 31, 1974 for individuals supplying information for inclusion in a system of records.

**AUTHORITY**

The authority to collect the information requested by this interview is derived from one or more of the following:

Tide 5, Code of Federal Regulations. Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, (United States Code, Section 2000e-16; Executive Order 11418, as amended.

**PURPOSES AND USES**

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed to any agency of the Federal Government having a working relationship with regards to EEO Commission activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

**EFFECTS OF NONDISCLOSURE**

Disclosure of the information sought is voluntary. However, failure on the part of Department of Justice employees to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you, up to and including termination.  Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_John F. Oleskowicz_
Type or print name of witness

_John F. Oleskowicz_ (signature)
Signature of Witness (Person providing statement)

_3/9/06_
Date

_Chicago, IL_
Location

**normawhite**

| | |
|---|---|
| From: | <Marcus.Williams@usdoj.gov> |
| To: | <JANEBREDMON@aol.com> |
| Sent: | Friday, May 19, 2006 8:52 AM |
| Subject: | RE: Information for Pendleton, B-05-2536 |

Jane,

We don't have a record of previous activity for the persons named below.

MW

-----Original Message-----
From: JANEBREDMON@aol.com [mailto:JANEBREDMON@aol.com]
Sent: Thursday, May 18, 2006 3:09 PM
To: Williams, Marcus (EEO)
Cc: normawhite@ccconline.net
Subject: Information for Pendleton, B-05-2536

Marcus,

Norma is almost completed with the review of the Pendleton investigation. However, we need to ascertain whether or not any of the RMOs have had previous EEO activity. Would you ask someone to obtain this information? Their names are:
1.  Thomas F. McLaughlin
2.  Charles T. Huggins
3.  William F. Johnson
4.  John F. Oleskowicz
5.  Gene E. Morrison

Thanks, Jane

Jane Redmon, General Manager/Chief Reviewer
Adept Services, Inc.
voice   703-931-5519
fax      703-671-0854
email    JaneBRedmon@aol.com

5/21/2006