## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**MARK A. PENDLETON,**

**Plaintiff,**

**v.**

**MICHAEL MUKASEY,**
**Attorney General,**

**Defendant.**

Civil Action No.  07-1884 (JDB)

## MEMORANDUM OPINION

Plaintiff Mark A. Pendleton, a Special Agent employed by the Department of Justice

Office of the Inspector General brings this action against Defendant Michael Mukasey, in his

official capacity as the Attorney General of the United States and head of the Department of

Justice (the "Department").  Pendleton alleges that the Department discriminated and retaliated

against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.,

when he was not promoted to either of two non-supervisory Special Agent Grade 14 positions.

Currently before the Court is the Department's motion to dismiss for improper venue, or

alternatively, to transfer to the Eastern District of Virginia.  Upon careful consideration of the

motion and the parties' memoranda, the applicable law, and the entire record, the Court will deny

the Department's motion.

## BACKGROUND

Pendleton, an African-American male, joined the Washington Field Office ("WFO") of

the Department of Justice Office of the Inspector General ("OIG") as a Grade 13 Special Agent in

1989.  Compl. ¶ 3.  Prior to initiating the instant action, Pendleton filed a lawsuit against the

Department in October 2004 alleging that he had been discriminated against when he was not

promoted to a Grade 14 Senior Special Agent position.  Id. ¶ 2 (citing Pendleton v. Gonzales,

Civil Action No. 04-1838 (D.D.C.) ("Pendleton I"), appeal pending, No. 07-5296 (D.C. Cir.)).[1]

While his first lawsuit was pending, Assistant Inspector General Thomas McLaughlin and his

predecessor decided to assess Pendleton's performance in two priority investigations to be

supervised by Special Agent Willie Haynes.  Id. ¶ 28.  Although there was never a formal

agreement, the Department allegedly indicated that Pendleton's successful completion of these

assignments could warrant a promotion to a Grade 14 position.  Id. ¶ 29.  Pendleton asserts that

he satisfactorily completed the assignments in late January of 2005, and that his supervisor

indicated he had in fact done "a great job in both" cases.  Id. ¶ 30.

    Around this same time, McLaughlin opened for competition two new non-supervisory

Senior Special Agent positions at the Grade 14 level.  Id. ¶ 31.  Pendleton timely applied for both

positions, and his application was reviewed by a three-member panel.  After Pendleton and seven

other candidates were interviewed at the Washington Field Office in Arlington, Virginia, the

panel ranked the candidates by order of qualifications.  Decl. of Thomas F. McLaughlin ¶¶ 7-8.

The Special Agent in Charge of the Washington Field Office, Thomas Huggins, drafted a

memorandum summarizing the consensus ranking of the panel and the reasons for their

recommendations to be sent to McLaughlin at his District of Columbia office.  Id. ¶ 8.  Huggins

also sent to McLaughlin the application packages for the candidates and the notes taken by the

_____

[1]Based on the facts underlying Pendleton I, the Department did not argue in that matter
that venue was improper in the District of Columbia.

panel members during the interviews.  Id. ¶ 9.  Because "McLaughlin serves as the final selecting official for all special agents hired by the eight field offices within the Investigation Divisions," the final selections were made in the District of Columbia; McLaughlin selected two individuals, neither of whom was Pendleton.  Def.'s Statement P. & A. Supp. Mot. to Dismiss ("Def.'s Statement") at 5.

On October 18, 2007, Pendleton initiated the current action challenging the Department's failure to promote him to either Grade 14 position.  The Department now moves to dismiss the complaint for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).  In the alternative, the Department argues that any remaining claims should be transferred to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a).

## LEGAL STANDARD

Under Title VII, a plaintiff may bring suit: (1) where "the unlawful employment practice is alleged to have been committed," (2) where "the employment records relevant to such practice are maintained and administered," or (3) where "the aggrieved person would have worked but for the alleged unlawful employment practice."  42 U.S.C. § 2000e-5(f)(3).  Only if the defendant is not found within any of these districts can a plaintiff rely on a fourth possible location -- "the judicial district in which the respondent has his principal office."  Id.

Fed. R. Civ. P. 12(b)(3) instructs the court to dismiss or transfer a case if venue is improper or inconvenient in the plaintiff's chosen forum.  "In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor."  Darby v. U.S. Dep't of Energy, 231 F. Supp. 2d 274, 276-77

(D.D.C. 2002) (citing 2215 Fifth St. Assocs. v. U-Haul Int'l, Inc., 148 F. Supp. 2d 50, 54 (D.D.C. 2001)).

If the district in which the action is brought does not meet the requirements of Title VII's venue provision, then that district court may either dismiss, "or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The decision whether dismissal or transfer is "in the interests of justice" is committed to the sound discretion of the district court. Naartex Consulting Corp. v. Watt, 722 F.2d 779, 789 (D.C. Cir. 1983). Generally, the interests of justice require transfer to the appropriate judicial district rather than dismissal. Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466- 67 (1962); James v. Booz-Allen, 227 F. Supp. 2d 16, 20 (D.D.C. 2002).

## DISCUSSION

When an alleged discriminatory employment practice is committed in another jurisdiction, the employment records are located in another jurisdiction, and the aggrieved person would have worked in another jurisdiction but for the unlawful employment practice, a plaintiff cannot properly lay venue in the District of Columbia. See Choi v. Skinner, 1990 WL 605543, 2 (D.D.C. Sept. 26, 1990) (transferring case where "the alleged unlawful employment practice took place in Virginia," "the records and files pertaining to the removal action are in Virginia," and "plaintiff would have remained employed with the FHA in Virginia but for the alleged unlawful employment practice"); Archuleta v. Sullivan, 725 F. Supp. 602, 605 (D.D.C. 1989) (transferring case where "the unlawful employment practices alleged by the Plaintiff occurred in Maryland, and all of her employment records are in Maryland"); Washington v. Gen. Elec. Corp., 686 F. Supp. 361, 363 (D.D.C. 1988) (transferring case where the unlawful employment practices

allegedly occurred in Virginia, plaintiff's records were in Virginia, and plaintiff would have worked in Virginia but for the alleged unlawful employment practice). Here, however, the well-pled factual allegations of Pendleton's complaint assert that discrimination and retaliation occurred in the District of Columbia when he was not selected for a promotion to a Grade 14 position.

Thus, "[u]nder section 2000e-5(f)(3), the court's first inquiry focuses on the locus of the alleged discrimination." James, 227 F. Supp. 2d at 22. In fact, this is the only provision upon which Pendleton can rely. There appears to be no question that Pendleton's relevant employment records are maintained and administered in Arlington, Virginia, and he would have worked in Arlington as a Grade 14 Special Agent but for the alleged discrimination and retaliation. The locus of the alleged discrimination and retaliation is, it turns out, determinative of the proper venue for this action.

According to Pendleton, McLaughlin is a "central figure in this case" who, operating from his office in the District of Columbia, did more than rubber stamp the recommendations that were made for the Grade 14 positions. Pl.'s Opp. at 1. McLaughlin established the selection process to be followed, and he selected Huggins to be a panel member to conduct interviews of the candidates. Dec. 14, 2006 Dep. of Thomas McLaughlin at 13-30. McLaughlin chose Huggins knowing that he "was among the managers identified in Pendleton I as being responsible for discriminating against Mr. Pendleton over a long period of time." Compl. ¶ 38. Pendleton also alleges that the Department deviated from established past procedures by "arranging for an off the record 'evaluation' of Pendleton by one of his supervisors." Id. ¶ 37. The manager responsible for assigning the evaluation was again Huggins, who eventually transmitted the

evaluation to McLaughlin.  Id. ¶ 38.

Moreover, McLaughlin himself was identified in the administrative complaints preceding
Pendleton I as being responsible for discriminating against Pendleton.  Id. ¶ 42.  Although
Pendleton I was pending, McLaughlin and his predecessor proposed a test to determine
Pendleton's qualifications for a promotion.  If Pendleton successfully completed two priority
investigations within an appropriate timeframe, "he would then be promoted to a Grade 14,
senior special agent in an office other than WFO," so long as he agreed to drop his first lawsuit.
Aug. 15, 2006 Dep. of Thomas McLaughlin at 90.  Because Pendleton did not drop his lawsuit,
the parties never had a binding agreement, but McLaughlin indicated that the Department moved
forward with its part of the "nonagreement" anyway "to show the good faith of the organization."
Id. at 97-98; Compl. ¶ 28.  According to the complaint, McLaughlin did not consider the
supervisor's laudatory "evaluation of Mr. Pendleton in the selection process at issue in this case,
despite knowing that defendant's purpose in having Mr. Pendleton work under Mr. Haynes' direct
supervision was supposedly to demonstrate the agency's 'good faith' in considering Mr. Pendleton
for promotion."  Compl. ¶ 46.  Pendleton therefore argues that "McLaughlin's substantive action
as selecting official and his retaliatory action in refusing to consider Mr. Pendleton's work while
on a special assignment conceived by him and his predecessor more than satisfies Title VII's
venue requirement."  Pl.'s Opp. at 3.

In response, the Department insists that "virtually every aspect of this case is based on
events which occurred at the WFO," in Arlington, Virginia.  Def.'s Statement at 2.  According to
the Department, the application packages for the Grade 14 positions were reviewed, the
interviews were conducted, and the selection recommendations were made in Virginia.  Id.  The

Department therefore downplays the involvement of McLaughlin, who was located in the District of Columbia and was the "selecting official." Id. at 5. But the Department concedes that the following materials were sent to McLaughlin in the District of Columbia to aid him in making the final selections: (1) a memorandum from Huggins explaining the panel's rankings of the candidates; (2) the candidates' application packages; and (3) the panel members' notes regarding the candidates. Id. at 6. And the Department acknowledges that McLaughlin himself made the final authorizations for the contested positions while working in the District of Columbia. Id. at 5. Nonetheless, the Department argues that McLaughlin played a "negligible role" in the process because he "gives great deference to his management officials in their selection decisions." Id.

In any event, the relevant facts alleged by Pendleton indicate that McLaughlin was thoroughly engaged in the discrimination and retaliation that allegedly ensued. Without question, he was aware of Pendleton's first employment discrimination action because he was named in the administrative complaints as an individual who had discriminated against Pendleton. Thus, he allegedly had knowledge of Pendleton's statutorily-protected activity, an element of the retaliation claim. According to the complaint, McLaughlin also played a role in procedural irregularities that singularly hurt Pendleton's chances for promotion. And the main alleged discriminatory and retaliatory action -- the failure to promote -- did not officially occur until McLaughlin made the final selections in the District of Columbia.

Other judges in this District have concluded that this last factor alone is determinative of proper venue under the first prong of 42 U.S.C. § 2000e-5(f)(3) for failure to promote cases. See Johnson v. Washington Gas Light Co., 89 F. Supp. 2d 45, 46 n.3 (D.D.C. 2000); Milburn v. Stone, 1991 WL 7660, at *1 (D.D.C. Jan. 7, 1991); Hayes v. RCA Service Co., 546 F. Supp. 661,

663 (D.D.C. 1982)).  Under these cases, for failure to promote allegations, "the inquiry for this

venue provision turns on where the allegedly discriminatory decision was made."  <u>Johnson</u>, 89 F.

Supp. 2d at 46 n.3 (citations omitted).  For example, in <u>Johnson</u>, the plaintiff worked in the

District of Columbia and argued that he had been discriminated against when he was not selected

for and promoted to a specialist position.  <u>Id.</u> at 46.  The plaintiff first attempted to lay venue in

the District of Columbia as the location where the unlawful employment practice was alleged to

have been committed.  To support this argument he argued that "discriminatory activities,

retaliation, and reprisal" had occurred at the District of Columbia location where he worked.  <u>Id.</u>

at 46 n.3.  However, the court determined that the plaintiff could not rely on this first statutory

basis for venue.  Because the plaintiff was complaining about his failure to be promoted, the

court determined that under the first statutory basis for venue, Virginia was where "[t]he

selections for the positions that plaintiff sought were made."  <u>Id.</u> (holding, however, that venue

was proper under the third statutory basis because it was "likely that, had plaintiff received one of

the positions he sought, he would have been assigned to work in the District of Columbia at

some point").  Here, McLaughlin made the selection decisions in the District of Columbia.

The Department argues that if this Court follows this line of cases and finds venue in the

District of Columbia based solely on the fact that the hiring decisions were made here, then that

"would mean that every OIG Agent selection across the nation would be subject to suit in the

District of Columbia."  Def.'s Statement at 6.  The Court, however, has no need to, and will not,

make such a broad pronouncement.  Because Pendleton contends that McLaughlin engaged in

discriminatory and retaliatory behavior when he selected Huggins to be a panel member for the

candidate interviews, skewed the selection process against Pendleton, failed to consider

Pendleton's successful completion of priority investigations, and when he retaliated against Pendleton based on his knowledge of Pendleton's protected activity, the Court's venue determination is supported by the fact that the final selection decisions were made in the District of Columbia but is not dependent on that fact alone. Based on the combination of these facts, Pendleton has met his burden of showing that venue properly lies in the District of Columbia.[2]

## CONCLUSION

For the reasons stated above, the Court will deny the Department's motion to dismiss for improper venue, or alternatively, to transfer to the Eastern District of Virginia. A separate order accompanies this memorandum opinion.


_____/s/_____
John D. Bates
United States District Judge


Date: May 13, 2008

---

[2]In light of the alleged facts discussed above, the Court need not linger long on the Department's alternative argument for transfer pursuant to 28 U.S.C. § 1404(a). The governing statute, 28 U.S.C. § 1404(a), provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." "As a general matter, the burden is on the party seeking transfer to demonstrate that the 'balance of convenience of the parties and witnesses and the interest of justice are in [its] favor.'" Thayer/Patricof Educ. Funding LLC v. Pryor Res., Inc., 196 F. Supp. 2d 21, 31 (D.D.C. 2002) (quoting Armco Steel Co. v. CSX Corp., 790 F. Supp. 311, 323 (D.D.C. 1991)). Here, the Department cannot meet that burden by simply rehashing its arguments regarding Title VII venue. The balance of convenience and fairness, then, does not tip in the Department's favor so as to demonstrate that a transfer would be "in the interest of justice."